## METALLIC EXTRACTION CO. v. BROWN.

(Circuit Court of Appeals, Eighth Circuit. October 8, 1900.)

### No. 1,346.

1. PATENTS—CONSTRUCTION OF CLAIMS.
   When language in a claim of a patent is evidently used with reference to the particular construction of the device illustrated by the drawings, without intention of limiting the claim to that particular construction, it will not be construed to effect such limitation, where to do so would be to deprive the inventor of the benefit of his actual invention, as clearly disclosed by his specification.

**2. SAME—INFRINGEMENT—ORE-ROASTING FURNACES.**

The Brown patent, No. 471,264, for improvements in ore-roasting furnaces, describes an invention the essential feature of which consists in constructing a supplemental chamber in which the actuating mechanism for moving the "rabbles" or ore stirrers travels; the object being, as stated in the specification, to protect such mechanism from the direct effect of the heat, dust, and fumes from the ore. *Held*, that such invention was not anticipated, and was meritorious, and that, in view of its declared object, the language of claim 1, which locates the supplemental chamber at the side of the main roasting chamber, as shown in the drawings, which illustrate the device as applied to a double-decked furnace, should not be construed as a limitation making the location an essential element of the invention, but the claims should be given a construction broad enough to cover the actual invention as applied to either a single or double decked furnace; also *held* that the patent was infringed by a single-decked furnace constructed in accordance with the Ropp patent, No. 532,031, having a supplemental chamber used for the same purpose, located beneath the roasting chamber.

**3. SAME—APPEAL—QUESTIONS PRESENTED.**

An appeal taken under section 7, Act March 3, 1891 (26 Stat. 828), as amended by Act Feb. 18, 1895 (28 Stat. 666), from a decree awarding an injunction against infringement of a patent and authorizing an accounting as to damages, and which has not become final, does not raise any question as to the damages recoverable under the pleadings and proofs.

Appeal from the Circuit Court of the United States for the District of Colorado.

This is an appeal by the Metallic Extraction Company, the defendant below, from an order enjoining the infringement of United States letters patent No. 471,264, granted to Horace F. Brown, the appellee, on March 22, 1892, under an application that was filed August 14, 1891. The patent in question was issued to Brown for alleged "new and useful improvements in ore-roasting furnaces." The nature of the patented device which was adjudged to have been infringed will be readily comprehended by the drawing on the adjoining page, Fig. 1, which is copied from the patent issued to Brown, and is a cross section of a double-deck ore-roasting furnace, made in accordance with directions contained in the patent. The larger spaces, marked "A" and "B," in the drawing, represent the two chambers of the furnace, one above the other, where ore is placed for the purpose of roasting it. The narrower spaces, on both sides of the roasting chambers, marked "a, a," in the drawing, represent corridors, or, as they are termed in the patent, "supplemental chambers." They are of equal length with the central or roasting chambers, and are parallel therewith, but separated therefrom by a slotted wall or partition, indicated in the drawing by the letters G, G. In these corridors a track is laid for their full length, on which, when the furnace is in operation, wheeled carriages propelled by an endless chain are run. From each carriage an arm projects laterally through the slot in the partition to the center of the roasting chamber, and from these arms depend stirrers, or "rabbles," as they are usually termed, which reach nearly to the floor of the roasting chambers. As these carriages move along the track in the corridors the rabbles also move in the same direction, thereby stirring up the ore in the roasting chamber, and effectually exposing it to the action of the heat. In a double-deck furnace, such as the figure represents, the carriages are made to move by mechanism, which it is unnecessary to describe, through the upper corridors in one direction, and thence through the lower corridors in the opposite direction. The carriages practically form links in the endless chain by which they are actuated. By the action of the rabbles as last described, the ore in the upper roasting chamber is also gradually moved to one end thereof, where it falls through a hole in the hearth into the lower roasting chamber, and is thence moved along the floor or hearth of the lower chamber to the opposite end thereof, where it falls through another hole to the cooling floor.

FIGURE 1.

The infringing device, the use of which by the appellant was enjoined by the lower court, is made in accordance with the specifications and drawings of United States letters patent No. 532,013, issued to Alfred Ropp on January 1, 1895, under an application which was filed on February 19, 1894. The construction of the infringing device will be readily comprehended by reference to the drawing on the adjoining page, Fig. 2, which is copied from the Ropp patent. In the drawing last referred to, A represents the roasting chamber of a single-deck furnace, and B, B, the hearth. Beneath the furnace is an open chamber, E, within which a four-wheeled truck travels on an iron track. From this truck an arm, G, extends upwardly through a slot in the hearth, and attached to its upper end is a supporting bar, H, from which rabbles or stirrers depend very nearly to the floor of the hearth. When the furnace is in operation, the truck moves on its track through the chamber underneath the hearth, and carries with it the bar and depending rabbles, by which the ore in the roasting chamber is stirred, and effectually exposed to the heat. When the truck reaches the end of the roasting chamber, it is made to return over a circular track exterior to the furnace to the opposite end, and re-enter the chamber or passageway underneath the roasting chamber. In the Ropp furnace, as in the Brown furnace, the chamber in which the rabble-bearing truck moves extends the full length of the roasting chamber, and is parallel thereto.

FIGURE 2.

FIGURE 3.

R. GEORGE        No. 80,065        1868

FIGURE 4.

D. J. O'HARRA        No. 207,890        1878

FIGURE 5.

C. M. ALLEN        No. 468,736        1892

FIGURE 6.

F. Ernst.
No. 81,462.
1868.

The plaintiff below contended, and the lower court so decided, that an ore-roasting furnace constructed in accordance with the specifications and drawings of the Ropp patent infringes claims 1 and 4 of the earlier patent granted to Brown. These claims in the Brown patent are as follows:

"(1) In an ore-roasting furnace having means for stirring and advancing the ore, a supplemental chamber at the side of the main roasting chamber, and cut off from said main chamber by a wall or partition, and carriers in said supplemental chambers connected with the stirrers, but removed from the direct action of the heat, fumes, and dust, substantially as herein described.
* * *

"(4) In an ore-roasting furnace, a wheeled carrier adapted to travel within the same, having a laterally projecting arm, to which the stirrers or blades are attached, and means for operating the carriers, substantially as herein described."

John H. Miller, for appellant.
Philip C. Dyrenforth, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The decision of the case in hand hinges on the construction which shall be given to claims 1 and 4 of the Brown patent, quoted above, and principally on the construction which shall be given to claim 1. The contentions of the respective parties, stated briefly, are as follows: The appellant insists that the invention of Brown covered by his first claim must be confined to "a supplemental chamber at the side (and not underneath or above) the main roasting chamber," because the patentee has expressly limited himself to such a location of the supplemental chamber by the language of his claim, and because the margin of invention is so small, in view of the state of the art when the patent was issued, that it will not admit of a broader interpretation of the claim. On the other hand, the appellee insists that the invention covered by the first claim is so far primary that the claim should be construed liberally so as to cover the actual invention disclosed by the specification, and that it should be held to comprehend a supplemental chamber placed underneath the roasting chamber, which is designed solely to protect the chain and trucks by which the rabbles are operated, as well as a chamber placed at the side thereof, and designed for the same purpose. Furnaces for the roasting and desulphurizing of mineral bearing ores were in use, as a matter of course, long prior to the date of Brown's patent, and it seems that single-deck, double-deck, and possibly multiple-deck furnaces had been constructed and had been in use for some years. In whatever form they were constructed, whether with a single deck or a double deck, it appears that it had been found necessary to stir or agitate the ores in the roasting chambers so that they would be evenly and effectually exposed to the heat, and that various instrumentalities had been employed for that purpose. The design or plan of a furnace which Brown annexes to his specification is that of a double-deck furnace, and he says generally of his invention that it "relates to that class of horizontal furnaces having two separate longitudinal compartments forming hearths, one above the other, with connecting passages between them, and employing carriages drawn by chains or cables for gradually conveying the ore from the feeding to the discharge opening." Further on in his specification, he points out the difficulties that had been encountered in the operation of furnaces, which his invention was intended to obviate, and in that behalf says:

"A serious objection to many of the furnaces of the type herein shown has been that the chains and their attachments were drawn through the center of the furnaces, and were thereby exposed to the destroying action of the heat, dust, and fumes from the ore, and consequently these parts were soon destroyed. A second objection arose from the fact that the plows or stirrers traveled against the floor of the compartment, which, being usually made of brick, would not only soon be cut in channels and worn out, but the plows or stirrers themselves would also quickly be worn away. The essential part of my invention lies in constructing the furnaces so that these objectionable features are avoided, and the moving or carrying parts protected from the direct action of the heat, fumes, and dust."

He then proceeds to describe the manner in which he obviates the difficulties above mentioned, by locating the chains and the trucks

which operate the rabbles or stirrers in a supplemental chamber adjacent to the roasting chamber, and separated therefrom by a slotted wall or partition. It is noteworthy that the difficulties mentioned by Brown as having been encountered in operating ore-roasting furnaces must have been experienced in the operation of single-deck furnaces, as well as in the operation of those of the double or multiple deck pattern, and that the device suggested by Brown was as well adapted to overcome the difficulties in one class of furnaces as in the other.

It is no doubt true, as counsel for the appellant suggests, that in furnaces of the double-deck kind the supplemental chamber for housing the rabble-operating machinery, and protecting it from heat, cannot be conveniently located elsewhere than at the side of the roasting chamber, and that it cannot well be placed underneath the hearth, as in the Ropp patent. But it will not do, we think, to argue from this premise, or from the fact that Brown selected a furnace of the double-deck pattern to illustrate his invention, that he did not intend to claim the supplemental chamber, except as it might be applied to double-deck furnaces, and located at the side of the main roasting chamber. It is most probable, we think, that in formulating his first claim he casually described the location of the supplemental chamber as it appeared in the drawings of the double-deck furnace annexed to his specification, without intending to make the location of the chamber an essential part of his invention. In that part of his specification where he asserts, in substance, that the essential feature of his invention consists in constructing a supplemental chamber to protect the rabble-operating mechanism, he does not intimate that he regards the location thereof, whether it be above, below, or at the side of the roasting oven, as a matter of importance, while it is obvious, at a glance, that its location is nothing more than a matter of convenience. In a double-deck furnace it is most convenient and practicable to place the supplemental chamber at the side of the main roasting oven; in a single-deck furnace it is equally convenient to locate it underneath the hearth, making a slot in the hearth, instead of in a partition wall, through which an arm may be projected to support and carry the rabbles. On whichever side of the four sides of the roasting oven the supplemental chamber is located, it operates in the same manner and accomplishes the same object. The merit of the invention, or, as the patentee himself says, the "essential part" of it, consists in the conception of a supplemental chamber to protect certain important mechanism from the disastrous effects of heat. This conception having been formed, its location in the various kinds of furnaces to which it might be applied with equal effect, to obviate difficulties that were common to all, was purely a matter of choice or convenience.

After an examination of the various patents that were introduced by the appellant to establish the state of the art at the time of Brown's application for a patent, we do not find that any inventor had described a method of protecting the rabble-operating mechanism of an ordinary ore-roasting furnace from the direct effects of heat by placing the mechanism in a supplemental chamber adjacent to the roasting oven, and separated therefrom by a wall or diaphragm. The

patents that are chiefly relied upon by the appellant to lessen the originality and disparage the merits of Brown's invention, and to compel a narrow construction of his first claim, are the following: United States letters patent No. 81,762, issued to Frederick Ernst on September 1, 1868; United States letters patent No. 80,065, issued to Robert George on July 21, 1868; United States letters patent No. 207,890, issued to David J. O'Harra on September 10, 1878; and United States letters patent No. 468,736, issued to Charles M. Allen on February 9, 1892, under an application therefor that was filed February 28, 1891. Four drawings have been appended to the foregoing statement (Figs. 3, 4, 5, and 6), for the purpose of showing the rabble-operating mechanism which is described in these patents. By referring to the drawings, it will be observed that, in three of the patents,—those which were issued to George, O'Harra, and Allen,— the mechanism in question, to wit, the trucks, the tracks on which they run, and the chain by which the trucks are propelled, is located in the main roasting chamber of the respective furnaces, where it is exposed to the direct action of the heat and corrosive gases. In the O'Harra patent a trough is constructed in the floor of the furnace, into which the endless chain which propels the rabbles may be dropped temporarily, by lessening its tension, when the furnace is not in operation. The Ernst patent describes a furnace of an entirely different type. The furnace is circular in form, and the hearth of the roasting chamber, which is indicated in the drawing by the letters I, I, revolves between two circular walls, B, C, carrying with it its load of ore. The ore is stirred as the hearth revolves by coming in contact with plates (one of which is indicated in the drawing by the letter M), which are placed across the hearth, and have bearings in the opposite walls. In this species of furnace there is no occasion for rabble-operating mechanism, such as is found in the other furnaces, because the ends of the stirrers are fixed in the walls and have no progressive motion. In the light of the present record, it must be conceded, we think, that Brown was the first to conceive the idea of constructing a supplemental chamber adjacent to the oven of an ordinary ore-roasting furnace, and locating the rabble-operating mechanism therein, for the purpose of shielding it from the heat and prolonging its life. No other inventor prior to his time appears to have hit upon that mode of construction, and in suggesting it he appears to have made a marked advance in the art of furnace building, even if his invention cannot be properly termed a pioneer invention.

This brings us to the crucial question whether Brown's first claim may be so construed as to embrace a supplemental chamber, located, as in the Ropp patent, underneath the roasting chamber of a single-deck furnace, although the language of his claim locates it "at the side of the main roasting chamber." As respects this question, the decision in the case of Winans v. Denmead, 15 How. 330, 14 L. Ed. 717, seems to be very much in point. In that case Winans had obtained a patent for a new method of constructing coal cars, and in his specification had described the box of the car as circular, and had also claimed it specifically as being made in the form of the frustum of a cone. The defendant had constructed boxes for his coal cars in the form of the frustum of a pyramid, the sides thereof being recti-

lineal, and by so doing had reaped all the advantages incident to the patentee's method of construction. Inasmuch as the invention of Winans appeared to be of much practical value, in that cars of his make could carry a greater load in comparison with their weight than ordinary cars, it was held, in substance, that he was not limited to the particular form of box described in his claim, but was entitled to an interpretation of the claim that would comprehend a car box made in the form of a frustum of a pyramid, which accomplished the same new result as the patented box, by the same principle of operation. Notwithstanding the language of the claim, the court declined to hold that the patentee had limited himself to the precise form of box mentioned therein, giving as its first reason for declining to so rule that the reasonable presumption was that, having a just right to cover and protect his whole invention, he intended to do so. Winans v. Denmead was cited, and the doctrine enunciated therein was applied, in the recent case of Hoyt v. Horne, 145 U. S. 302, 12 Sup. Ct. 922, 36 L. Ed. 713, where the patent under consideration was for an improvement in machines for beating rags and other fibrous material into pulp. In that case it appeared that the patentee in one of his claims had described his improvement as consisting in part "in circulating the fibrous material and liquid in vertical planes." By making slight changes in some parts of the machine described by the patent, the defendant had manufactured and was using a pulp-making machine which caused the pulp to circulate in the vat in a "horizontal plane" instead of circulating in "vertical planes." Upon an examination of the defendant's machine, the court found that he had succeeded in appropriating all that was of value in the patented device. It accordingly held the defendant guilty of an infringement of the plaintiff's patent, and declined to regard the statement contained in the plaintiff's claim as to the manner in which the pulp circulated as a limitation of the claim. Winans v. Denmead has been cited with approval, and the principle enunciated has been applied, in several other cases, to wit: McCormick Harvesting Mach. Co. v. Aultman & Co., 37 U. S. App. 299, 16 C. C. A. 259, 69 Fed. 371, 387; Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co., 21 U. S. App. 244, 10 C. C. A. 194, 61 Fed. 958; Electric Co. v. La Rue, 139 U. S. 601, 606, 11 Sup. Ct. 670, 35 L. Ed. 294; Devlin v. Paynter, 28 U. S. App. 115, 12 C. C. A. 188, 64 Fed. 398.

We are unable to find in Brown's specification, considered as an entirety, or in the state of the art at the time his application was filed, sufficient reasons to warrant us in holding that he intended to claim less than what now appears to have been his full invention, and that the language of his claim locating the supplemental chamber "at the side of the main roasting chamber" was used deliberately for the purpose of limiting it. We can conceive of no reason for such a self-imposed limitation, since it is obvious that whether the supplemental chamber was placed at the side of the main roasting oven, or underneath, it would operate in the same manner and produce the same result. As we have before intimated, we think that the words stating the location of the supplemental chamber crept into the claim inadvertently, because of the style of furnace that happened to be

104 F.—23

chosen to illustrate or embody the invention. We are accordingly of opinion that the first claim of the Brown patent should be construed to cover a supplemental chamber placed beneath the main roasting chamber, as in the Ropp device, because a supplemental chamber so placed is a mere mechanical equivalent for one located at the side thereof.

In opposition to this view, our attention is challenged to the decision in Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344, where, as it is claimed, a doctrine was announced which is fatal to a recovery in the present instance. In that case the language of a claim which described the lower cords of a truss bridge as a "series of wide and thin drilled eye bars, C, C, applied on edge between ribs," was construed literally, and held not to comprehend cords made of round bars of iron flattened at the ends. A careful study of the decision, however, has served to convince us that the language last quoted was construed literally, because the court was satisfied by an examination of the specification that the patentee intended to make the form of the cords of the truss as described in his claim an essential part of his invention, and because the margin of invention in that case was so small as to necessitate a strict construction of the claim. The reasons which appear to have influenced that decision do not exist in the case in hand, because we are unable to say that Brown intended to claim less than he was entitled to claim, or that the state of the art demands a literal interpretation of his claim.

It is urged finally in behalf of the appellant that the decree which was entered by the lower court must, in any event, be modified so as to exempt it from an accounting for damages resulting from the infringement, because the appellee did not allege in his bill or tender any evidence that he had marked his machines with the word "Patented," together with the day and year the patent was granted, or prove that the defendant was duly notified of the infringement, as required by section 4900 of the Revised Statutes. In support of this proposition, the appellant cites Dunlap v. Schofield, 152 U. S. 244, 14 Sup. Ct. 576, 38 L. Ed. 426; also Coupe v. Royer, 155 U. S. 565, 584, 15 Sup. Ct. 199, 39 L. Ed. 263. With reference to this point, it may be said that, as this is an appeal taken under the provisions of section 7 of the act of March 3, 1891 (26 Stat. 828, c. 517), as amended by the act of February 18, 1895 (28 Stat. 666, c. 96), the decree below not having as yet become final, the appeal brings before this court for review only so much of the decree as awarded an injunction. Besides, we do not find that the attention of the lower court was directed to that clause of its decree which authorized an accounting as to the damages, and it may be that no damages will ever be claimed by the appellee or assessed in his favor. In view of these considerations, we do not deem it necessary at this time to wade through the great volume of testimony to ascertain if there was, in fact, sufficient evidence that notice of the infringement had been given to the appellant to warrant a recovery of damages as well as profits. This question may well be left open for future consideration when there shall have been a final decree which awards damages. With this reservation of the right to consider the question last mentioned, if it shall ever become necessary to do so, the decree below is affirmed.