LANYON ZINC CO. v. BROWN et al.

(Circuit Court of Appeals, Eighth Circuit. March 17, 1902.)

No. 1,586.

1. PATENTS—VALIDITY AND INFRINGEMENT—ORE-ROASTING FURNACE.
   The Brown patent, No. 471,264, for an ore-roasting furnace, claim 1, which covers a furnace in which the mechanism for operating the rabbles for stirring the ore is placed in a supplemental chamber for the purpose of protecting it from the action of the heat, dust, and fumes, was not anticipated by the Munroe patent, No. 227,818, and is valid. Such claim is also infringed by a furnace made in accordance with the Ropp patent, No. 523,013.

2. SAME—ASSIGNMENTS—EVIDENCE OF EXECUTION.
   Act March 3, 1897 (29 Stat. 693, c. 391) § 5, which provides that if an assignment of a patent is made before a notary public his certificate of acknowledgment shall be taken as prima facie evidence of its execution, is not limited in its operation to acknowledgments taken after its passage, but declares a rule of evidence applicable to all assignments so acknowledged.

3. SAME—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.
   A preliminary injunction against the use by defendant of machines which have been previously adjudged to infringe complainant's patent will not be denied on the ground of public policy, because it will result in great loss to defendant and inconvenience to the public, and especially where its operation has been suspended pending an appeal for a sufficient time to have enabled defendant to make such changes in the machines as to avoid infringement, if it had so desired.

Appeal from the Circuit Court of the United States for the District of Kansas.

Albert H. Walker (John H. Atwood, on the brief), for appellant.
Philip C. Dyrenforth, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is an appeal from an order granting an injunction pendente lite in a patent case. The infringing device, the use of which was restrained, is an ore-roasting furnace, manufactured in full accordance with letters patent No. 523,013, issued to Alfred Ropp in January, 1895. This patent was considered by this court in the case of Extraction Co. v. Brown, 43 C. C. A. 568, 104 Fed. 345, and it was held that an ore-roasting furnace constructed in accordance with the specifications of that patent, with a supplemental chamber designed to protect the rabble operating mechanism from the direct action of flames and dust, and located underneath the hearth of the oven instead of at the side thereof, infringed claim 1 of patent No. 471,264, granted to Horace F. Brown on March 22, 1892. This court held, in substance, for reasons fully stated in its opinion, that claim 1 of the Brown patent should be construed to cover a supplemental chamber placed beneath the main roasting chamber, and designed to protect the rabble operating mechanism from the direct action of the flames, heat, and dust within the oven, because a supplemental chamber so placed was a mechanical equivalent for a supplemental chamber located at the side of the oven and designed for the same purpose. 43 C. C. A. 576, 577, 104 Fed. 353, 354. A motion for a rehearing having been filed after the announcement of our decision in that case, we declined to recede from that construction of the Brown patent, although we did hold that the device covered by claim 4 of the Brown patent, which we had not considered in our original opinion, was anticipated by earlier patents, and that that claim was void. 49 C. C. A. 147, 110 Fed. 665. The present action, which was entitled in the lower court "Horace F. Brown, Selwyn C. Edgar, and Collinsville Zinc Co. v. Lanyon Zinc Co.," was pending in the lower court when the decision in the case of Extraction Co. v. Brown, last referred to, was announced; and as it appeared that the Lanyon Zinc Company, the defendant below and the appellant here, was using the Ropp furnace, and that the use thereof constituted the grievance of which the plaintiffs below complained, the circuit court, very shortly after the announcement of that decision, granted an injunction pendente lite. The injunction, by its terms, was to become effective on May 15, 1901, the order granting the same having been made on April 24, 1901; but before it became effective the operation of the injunction was further suspended by an order duly made and entered of record in the lower court, until the appeal from the order granting the injunction was heard and determined, or until the decision of the case on final hearing by the lower court, whichever event should occur first. This order, deferring the time when the injunction should take effect, was made on condition that the Lanyon Zinc Company should give a bond in the sum of $40,000, which was subsequently executed, conditioned to pay such damages as might be occasioned by the delay. The case has not yet been reached for final hearing in the lower court, although it is said that most of the testimony has been taken, but the appeal from the restraining order was reached in its regular course at the present term of this court, and counsel for the appellees insisted on their right to a hearing and upon the entry of such a decree as they were entitled to upon the record that had been lodged in this court.

The assignment of errors, which was filed in the lower court, specifies four as having been committed. The first and the third errors so assigned are—First, that the lower court erred in holding claim 1 of patent 471,264, being the Brown patent, to be valid; and, third, in adjudging that the doings of the defendant, the Lanyon Zinc Company, although it was confessedly using a Ropp furnace, infringed claim 1 of the Brown patent. Both of these questions were considered and decided in Extraction Co. v. Brown, 43 C. C. A. 568, 104 Fed. 345, as heretofore stated; and, although it is true that the decision was rendered in a case to which the appellant was not a party, yet it disposes of the two errors last mentioned, so far as this court is concerned, unless the appellant has brought upon the record some new facts which are sufficiently potent to overthrow the conclusion that was formerly reached, concerning the Brown patent. We do not find in the record any new facts which, in our judgment, are entitled to such weight. It is true that on the hearing of the motion for an injunction the appellant did introduce in evidence letters patent 227,-818, issued on May 18, 1880, to William C. Munroe, which patent was not in evidence in the former case, and it is likewise true that it introduced the affidavits of certain experts which are to the effect that, in view of the Munroe patent, the device covered by claim 1 of the Brown patent was within the reach of ordinary mechanical skill, and hence was not patentable. This is the only additional testimony which was not before us on the former action. We are unable to concur in the opinion so expressed by the appellant's experts concerning the Munroe patent, or in the reasoning upon which it rests. Cuts taken from the Munroe patent will be found on the opposite page, from which it will be seen that his furnace is circular in form; that the heat is applied to the floor of the furnace, by means of the fire boxes, A', and that the flames do not invade the oven where the ore is placed, but that heat is imparted thereto by conduction; that the stirring of the ore within the oven is accomplished by stirrers depending from four radial arms, designated "E" in the drawing, these arms being supported at one end by a vertical shaft in the middle of the oven marked "C," and at the outer end by an annular rack or ring marked "F," and that the movement of these rabble arms forward and backward is effected by the rotation of the annular ring which meshes into a cogwheel, H, that is actuated by a belt passing around band wheels on the outside of the furnace. The annular ring, F, to which the outer ends of the radial arms are attached, revolves, as the patentee says, in a groove on the outer edge of the bed plate or bottom of the furnace, and at four opposite points in this groove rollers are placed for the purpose of supporting the annular ring, one of which is indicated in figure 1 of the cut by the letter "K." On the inner edge of this groove or depression in the floor of the furnace there may be, and probably is, a slight rim to prevent the ore, as it is stirred, from falling into the groove; but there is nothing in the specification of the patent which indicates that this depression in the floor and the rim on the inner side thereof were devised by the patentee for the purpose of protecting the rabble operating mechanism from either heat or dust while the furnace is in operation, since the

Fig.1.

Fig.2.

fact is that, owing to the manner in which the heat is applied externally to the floor of the furnace, the rabble operating mechanism which is located within the oven is subjected to the same degree of heat as the ore itself. We find in the patent of Munroe no suggestion of the supplemental chamber at the side or bottom of the main roasting oven, and cut off therefrom by a wall or partition, for the purpose of protecting the rabble operating mechanism from heat, fumes, and dust, such as Brown constructed and claimed, nor does it appear that Munroe had any such object in view. The advantages which he suggests and claims for his style of roasting oven are of an entirely different sort, and it is only by the exercise of great ingenuity that a plausible claim can be made that the one furnace was the prototype of or that it suggested the other.

By its second assignment of error the appellant asserts that the injunction against it was erroneously awarded because the complainants below, the appellees here, showed no title to the Brown patent, No. 471,264, which as they claimed was being infringed. The moving papers, which were presented to the lower court, disclose that the Brown patent, No. 471,264, was issued to Mary C. Brown as assignee of Horace F. Brown, pursuant to an assignment duly executed before the patent was issued; that Horace F. Brown and Mary C. Brown, on November 10, 1893, licensed the Collinsville Zinc Company to erect, use, and maintain ore-roasting furnaces, under the aforesaid letters patent, at any works owned or controlled by said licensee; that on August 15, 1894, Mary C. Brown, by an assignment acknowledged before a notary public and recorded in the patent office, sold and transferred to Selwyn C. Edgar all her right, title, and interest in and to letters patent No. 471,264, for, to, and in the states of Missouri, Kansas, Indiana, Arkansas, and Illinois, except as to furnaces then or thereafter used by the Collinsville Zinc Company, under the aforesaid license, reserving to herself, however, the right to license others to use the furnace within said territory for smelting ores other than zinc ore; that on September 18, 1894, Edgar transferred to the Collinsville Zinc Company an undivided half of his interest in the patent; and that afterwards, on October 31, 1896, Mary C. Brown, by an assignment duly acknowledged before a notary public, reassigned to Horace F. Brown all her right, title, and interest in said letters patent. When we say that the moving papers disclose these facts, we mean that the bill, which is duly verified, alleges them, and that the various transfers and assignments, referred to therein, are attached to the bill as exhibits, and appear to have been duly executed, and all of them were either acknowledged before a notary public or they have been accepted and recorded by the commissioner of patents. There is nothing on the face of the papers which creates a suspicion that the title to the patent is not duly vested in the complainants in the manner alleged in the complaint. We cannot sustain the aforesaid contention, which, on the face of it, appears to be highly technical. By section 5 of the act of March 3, 1897, relating to patents (29 Stat. 693, c. 391), it is declared that, if an assignment of a patent is made before a notary public, his certificate of such acknowledgment, under his hand and seal, shall be taken as prima facie evidence of its execution; and while it is true that this act did not take effect until January 1, 1898, yet it will be observed that the act does not say that it shall only be applicable to acknowledgments taken after that date. It is a statute which was intended to declare the evidential effect to be given to acknowledgments before a notary, after a given date, without special reference, however, to the time when the acknowledgment was taken; and in the absence of any specific provision that it should only apply to acknowledgments taken subsequently to January 1, 1898, we perceive no sufficient reason why it should be limited in its operation to acknowledgments so taken. We concur in the views that were expressed on this point by the circuit court of the United States for the district of Vermont in the case of De Laval Separator Co. v. Vermont Farm-Mach. Co., 109 Fed. 813.

By its fourth and last specific assignment of error the appellant says that the lower court erred in not adjudging that public policy forbids the present discontinuance of the use by it of its ore-roasting furnaces; that is to say, furnaces made in accordance with the specification of the Ropp patent. In support of this assignment our attention is directed to the great loss which the appellant will sustain, and to the public inconvenience which, as it is claimed, will be experienced, if the injunction is allowed to go into effect, and we are asked to further suspend its operation at least until the case shall have been finally heard and determined. On the other hand, the appellees urge, with great force, that the laws of the United States give to them, for a limited time, an exclusive right to make, use, and vend their invention in the manner which they deem best; that this court has held, on full consideration and on substantially the same evidence which appears in this record, that the first claim of the Brown patent is valid, and that the use of a furnace made according to the specification of the Ropp patent is an infringement of that claim and an invasion of their property rights. They further urge that the operation of the injunction has already been suspended for nearly one year after it was originally granted; that the appellant has had, in the meantime, abundant opportunity to make such changes in its furnaces as will avoid further infringement, if it intends to do so; that the record on the final hearing of this case cannot be substantially different from the one now before the court; that the appellees have already been put to great expense in the defense of their rights, and should not be compelled to incur the risk of further loss and damage, or be put to the expense of proving the amount of their loss in an accounting for the damages and profits incident to a further unlawful use of their invention. These considerations have had great weight with us, and have influenced us to refuse to further suspend the operation of the injunction. And as sufficient grounds existed for granting the injunction, after the decision of this court in the case of Extraction Co. v. Brown, and as there was no abuse of discretion or other error, so far as we can discover, the order appealed from, made April 24, 1901, will be affirmed in so far as it enjoins the infringement of claim 1 of patent No. 471,264.