DETROIT COPPER MINING CO. OF ARIZONA v. MINE & SMELTER SUPPLY CO.†

ARIZONA COPPER CO. v. SAME.

(Circuit Court of Appeals, Ninth Circuit. July 6, 1914.)

No. 2291.

1. PATENTS (§ 328*) — VALIDITY AND INFRINGEMENT — ORE CONCENTRATING TABLE.

The Wilfley patent, No. 590,675, for an ore concentrating table, is valid, and entitled to a reasonably liberal construction; also *held* infringed.

2. PATENTS (§ 236*)—INFRINGEMENT—CHANGE OF FORM.

Form in a patented device is immaterial, unless it is essential to the result, or indispensable by reason of the state of the art to the novelty of the claim, and infringement is not avoided by a change of form which does not change the principle or mode of operation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 372, 373; Dec. Dig. § 236.*]

Appeals from the District Court of the United States for the District of Arizona; Richard E. Sloan, Judge.

Suits in equity by the Mine & Smelter Supply Company against the Detroit Copper Mining Company of Arizona and the Arizona Copper Company. Decrees for complainant, and defendants appeal. Affirmed.

The appeal in this case is taken from a decree of the court below sustaining letters patent No. 590,675, issued September 28, 1897, to Arthur R. Wilfley and assigned to the appellee, and adjudging the appellants to have infringed the same. Suits against each of the appellants were consolidated for the purpose of trial in the court below, and they are heard as one case on the appeal. The patent in question is for a certain new and useful improvement in ore concentrators. The appellants are copper mining companies, and they

used in their business a form of ore concentrator manufactured by the Deister Concentrating Company at Ft. Wayne, Ind. The controversy herein relates to the concentrating table, a table upon which finely comminuted particles of metal are separated from the waste material or gangue with which it is commingled by floating the same in the form of a wet pulp upon the table and separating the mineral from the gangue by a lateral agitation of the table, together with the action of water flowing across the same. The appellants in their answer admitted the validity of the appellee's patent, but denied that they had used ore concentrating tables which embodied the improvements and invention so patented to Wilfley, or that they infringed the claims thereof, and they alleged that prior to that invention the art of making and using ore concentrators was old, and that such concentrating tables had been made and patented and used in many forms before Wilfley made his improvement, and they referred to numerous patents showing the state of the prior art. They alleged that the Wilfley patent was for a narrow and specific improvement in an old art, and that it must be taken to apply only to the apparatus covered clearly and closely by its specifications and claims.

On referring to the patents introduced to show the prior art, it will be seen that they all contain two elements, a concentrating surface or table, usually consisting of a combination of riffles, and a clear or smooth space, and a reciprocating movement in the form of oscillation, the effect of which is to drive forward the pulp which rests on the surface of the table, and to separate and stratify the mineral matter in the valleys between the riffles, while the gangue or base matter passes over to the lower side of the table, from which it is thence removed. In the specifications of the Wilfley patent, the process is described as follows:

"All the mineral, together with a portion of the gangue, is first caught by the riffles, and under the influence of the table's motion is carried longitudinally toward the foot of the table until it reaches the smooth, unriffled portion A of the table, where it is acted on by the water, which effects a perfect or approximately perfect separation of the gangue from the mineral. As the material caught by the uppermost and shortest riffle passes to the portion A of the table the action of the water, which is fed to the upper edge of the tables, carries the gangue downward to the next riffle, while the mineral remains on the smooth portion A, and is carried toward the tail of the table, where it is finally discharged. It is expected that some of the mineral caught by the uppermost and shortest riffle will be carried downward with the gangue to the next riffle, which is longer. After leaving this last-named riffle and passing to the smooth or unriffled portion of the table, the water again acts on the material, and carries the gangue downward to the next riffle, leaving the clean mineral on the smooth portion A of the table. If any of the mineral escapes with the gangue the second time, it will be caught by the riffle next below and again subjected to the separating action of the water as soon as it reaches the smooth portion A of the table. In this manner the material is carried transversely downward and longitudinally forward, the gangue being discharged at the lower edge of the table completely impoverished of its mineral values, while the latter are discharged at the foot or tail of the table. A portion of the gangue—that is to say, the lighter part thereof—passes over each riffle in succession from the shortest or uppermost to the longest or lowermost riffle. The mineral and the heavier gangue are caught by the riffles, and finally separated on the smooth portion A of the table. This combination, in a concentrating-table, of riffles of varying length for catching the mineral and a smooth, plain, or unriffled portion at the extremities of the riffles, where the final separation is effected through the action of the water, is believed to be entirely new in an apparatus of this class."

The claims which were held to be infringed are the following:

"1. A transversely-inclined concentrating-table, having a movement whose tendency is to carry the material longitudinally forward toward the tail or foot of the table, said table being provided with a number of riffles extending longitudinally a portion of the distance from its head toward its foot, said riffles varying in length for the purpose specified, the table having a smooth, plain, or unriffled portion extending from the extremities of the riffles toward

the tail of the table, whereby the material as it leaves the riffles is subjected to the action of the water on the smooth portion of the table and the final separation of the mineral from the gangue effected.

"2. A transversely-inclined concentrating-table having a number of longitudinal riffles extending a portion of the table's length from the head toward the foot, said riffles being of unequal length, the uppermost being the shortest, while the other riffles increase in length from the upper edge to the lower edge of the table, the table having a plain or unriffled portion lying at the extremities of the riffles and adapted to receive the material caught by the riffles."

"7. The combination of a transversely-inclined concentrating-table having a series of riffles extending longitudinally from the head toward the tail of the table, said riffles being of unequal length, the uppermost being the shortest, and the riffles increasing in length from the upper to the lower edge of the table, the table being provided with a plain or unriffled portion of suitable area located at the extremities of the riffles, means for feeding the material to the upper portion of the table's head, means for discharging water on the upper edge of the table, and suitable means for imparting to the table a longitudinally-reciprocating movement of a character adapted to move the material from the head toward the tail of the table."

Robert S. Taylor and Elwin M. Hulse, both of Ft. Wayne, Ind. (Edward Rector, of Chicago, Ill., of counsel), for appellants.

George L. Hodges and D. Edgar Wilson, both of Denver, Colo., for appellee.

Before GILBERT and ROSS, Circuit Judges, and VAN FLEET, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellants admit the validity of the Wilfley patent, but they contend that it covers an invention which is an extremely narrow improvement of an art which was old, and that since the invention described is for a specific improvement in that art, the claims are to be so limited as to apply closely to the apparatus described in the specifications and claims, since Wilfley patented as that feature of his invention only a specific form and arrangement of riffles, and a specific smooth surface upon the concentrating-table, and went no farther, and that when so construed the claims are not infringed by the appellants' apparatus. The contention of the appellee is that the Wilfley invention marks a distinct advance, and discloses the application of principles and the performance of functions theretofore unknown to the art, and that the claims thereof are entitled to a construction commensurate with the step in advance, and that with such construction, and without expanding the Wilfley invention, the device used by the appellants will be found to infringe the same.

It is true that the use of concentrating-tables with riffles and with smooth surfaces was old, and that patents prior to Wilfley's showed the wet concentration of ore on automatically vibrating tables having transverse riffles or corrugations for the purpose of arresting the metal and separating it from the gangue. It does not appear, however, that any of the prior patents was successful, or that any of the concentrating-tables described therein went into general use. Wilfley invented a table divided into two areas, a smooth surface and a surface covered with riffles of unequal length, the shortest being at the top of

the table, and the others increasing in length until the last riffle extended the whole length of the table, leaving a triangular smooth surface of about one-fourth the area of the table. In operation the pulp as it flows upon the upper side of the Wilfley table is subjected to two forces, one the endwise oscillation of the table, the other the transverse flow of water across the same. As the ore pulp is discharged upon the uppermost riffle, the side wash and the motion of the table cause the same to flow transversely over the riffles, and cause the heavier minerals to settle between the riffles in the order of their specific gravity, the gangue flowing over the top of the riffles until it is discharged from the tables. In the meantime the mineral is caused to travel forward, toward the discharge end, while at the same time it is subjected to a repeated side wash of water in a continuous operation, which removes the lighter gangue and leaves the mineral clean. The riffle cleats terminate in a diagonal line, and they restrain the material and guide it in the line of motion, causing an automatic and visible line of separation between the mineral and the gangue.

[2] The improvement made by Wilfley, as measured by the prior art and as proven by the testimony, is evidently of such merit that the claims of his patent are entitled to a reasonably liberal construction. The mere form of his table does not measure the scope of his invention. He did more than to invent a table of a precise form and configuration. He discovered a method of application of principles and an effectual mode of operation, and the appellee should be protected in that feature of the combination which is new in principle and function. In view of the evidence, we are not convinced that the court below erred in reaching the conclusion that the appellants' apparatus infringed claims 1, 2, and 7 of the Wilfley patent. In so deciding we are not unmindful of the rule that the protection afforded by a patent is to that only which is specified in the claims, that the language of the claims is intended to convey public notice of the limits of the invention, and that, as was said by Mr. Justice Brown, in McClain v. Ortmayer, 141 U. S. 419–424, 12 Sup. Ct. 76, 77 (35 L. Ed. 800):

"The object of the patent law in requiring the patentee to 'particularly point out and distinctly claim the part, improvement or combination which he claims as his invention or discovery' is not only to secure to him all to which he is entitled, but to apprise the public of what is still open to them."

But form is immaterial unless it is essential to the result, or indispensable by reason of the state of the art to the novelty of the claim.

"When the whole substance of the invention may be copied in a different form, it is the duty of courts and juries to look through the form for the substance of the invention." Winans v. Denmead, 15 How. 330, 14 L. Ed. 717; Metallic Extraction Co. v. Brown, 104 Fed. 345, 43 C. C. A. 568; Benbow-Brammer Mfg. Co. v. Simpson Mfg. Co. (C. C.) 132 Fed. 614.

The riffles in the Deister table, used by the appellants, differ from those of the Wilfley table in that each alternate riffle terminates with minute and slightly deflected ends, which have an elevation of but one thirty-second of an inch, so that at the conclusion of the separa-

tion the material is discharged into the open spaces between them. If the deflected ends were removed, there would remain a table having riffles with advancing terminals, as in the Wilfley table. We are of the opinion that the use of these deflected terminals so greatly reduced in elevation does not serve to differentiate the Deister table from that of the patent in suit, whether the space covered by them be regarded as substantially a smooth surface, as was held in Wilfley v. Denver Engineering Works Co. et al. (C. C.) 111 Fed. 760, and in Mine & Smelter Supply Co. v. Braeckel Concentrator Co. (D. C.) 107 Fed. 897, or whether they be regarded as a continuation of the riffles. There is presented in either view a table with riffles terminating in a diagonal course with reference to their general direction, a course which is essential to the successful operation of either table, and thereby the appellants have availed themselves of the distinctive feature of the Wilfley table, and therewith they have performed the same function by the same means, and in substantially the same manner, as in the Wilfley combination.

The decrees are affirmed.