ROSS–MOYER MFG. CO. v. RANDALL et al.

(Circuit Court of Appeals, Sixth Circuit. October 8, 1900.)

No. 821.

1. PATENTS—CONSTRUCTION OF CLAIM.
The use of letters in a claim to describe a patented invention, which is merely an improvement of a narrow character, will limit the inventor to the elements so designated, as shown in the drawings and specification to which the letters refer, which are by such reference, in effect, incorporated in the claim.

2. SAME—INFRINGEMENT—STRAP TRIMMERS.
The Randall patent, No. 380,296, for an improved strap trimmer, is valid, but is limited to the particular construction specified in the claim and described in the drawings and specification, and as so limited is not infringed by a machine made in accordance with the Miller patent, No. 611,181, which shows a different construction of the swinging levers which hold the strap in place during the operation.

Appeal from the Circuit Court of the United States for the Southern District of Ohio.

E. E. Wood and Wm. R. Wood, for appellant.
James Moore, for appellees.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge. This action was brought in the court below for an injunction and accounting against the Ross-Moyer Manufacturing Company for infringement of letters patent granted to' Silas H. Randall for an improvement in leather-trimming machines, issued March 27, 1888, No. 380,296. After hearing, the court adjudged the machine in use by respondents, and made in conformity to letters patent granted subsequent to the Randall patent to L. L. Miller, No. 611,181, dated September 20, 1898, for trace trimmer, an infringement of the Randall patent, which the court found to be a valid invention. From that decree this appeal is taken to this court.

An examination of the letters patent and models in evidence in the case make it apparent that leather-trimming machines, having the general features of the Randall patent, were old at the time of that invention. Machines having bedplates, knives, carriages for the knives, adjustable for different widths of straps, screws to lock the carriage on the guide, and levers to hold the straps in place between the knives for continuously trimming opposite edges thereof, had long been in use. The Osborn model in evidence is a machine having these various elements, permitting the strap to be threaded through the same, with levers the feet of which have a spring pressure upon the strap to hold it in position, the springs being operated by means of a torsion lever. Randall recognized that he was entering an old field, for he begins his specification with the statement:

"My invention comprises a specific construction of those machines which are employed for simultaneously trimming the opposite edges of a trace or other similar strap."

This statement recognizes that broad claims could not be granted for the invention, and the inventor, by this frank declaration, announces his purpose to obtain a patent for a specific construction of machines for the purpose stated. This construction the inventor describes by means of certain specifications and drawings, as follows:

"In the annexed drawings, Fig. 1 is a vertical section of my improved machine in condition for receiving a strap, said section being taken at the line, Z, Z, of Fig. 2. Fig. 2 is a plan of the machine, the presser feet being shown in their normal or depressed position. Fig. 3 is a front elevation of the machine, the feet being in the same position as in the preceding illustration. Fig. 4 is a side elevation of one of the levers, detached from its slide or carriage. Fig. 5 is a side elevation of said carriage, detached from the machine. Fig. 6 is a sectionized plan of a carriage. Fig. 7 is an enlarged horizontal section, showing the knives in the act of trimming the edges of a strap. A represents the frame or bedplate of the machine, which frame has suitable provision for attachment to a bench or table, B. Seen in Fig. 1. C, C', represent a pair of parallel guides running longitudinally of the frame, the front guide, C, having a chamfered edge, c, for a purpose that will presently appear. Adapted to be adjusted along these guides is a pair of precisely similar slides or carriages, consisting of side plates, D, D', E, E', extending above and below said guides, and united at bottom by webs, d, e. d' and e' are extensions at the front ends of the plates, D', E, to which extensions the knives, F, F', are attached by screws or bolts, f, f'. The slides are retained in position by screws, G, G', tapped into the webs, d, e, the points of said screws bearing against the chamfered edge, c, of guide, C, and the screw, G, being preferably provided with a small hand wheel, g, because the slide, D, is the one that is the most frequently shifted. Pivoted within these side plates, D, D', E, E', as at H, H', are swinging levers, I, J, the front ends of which are bent inwardly at i, j, and then carried down at i', j', which downward prolongations form the presser feet of the machine. Furthermore, each lever has a segmental cylindrical flange, i'', j'', concentric with the pivots, H, H', which flanges have thongs, chains, or wire cords, K, L, attached thereto. The thong, K, is secured to the front of said flanges, and the bend of said thong carries a weight or spring capable of causing the feet, i', j', to bear firmly upon the strap, P. In Fig. 1 this thong is shown coupled to the free end of a spring, M, the other end thereof being suitably secured to the frame of bench, B. Thong, L, is secured to the rear of flanges, i'', j'', and its bend is coupled to a treadle, N. O, O', are stops of these flanges, which stops bear against the rear side of guide, C', and thus limit the opening of levers, I, J. See Fig. 1. This machine is operated in the following manner: Slide, E, E', is first screwed very firmly to the frame, and near the right end of guides, C, C', after which act the other slide, D, D', is adjusted to the required width of strap, and retained in position by the screw, G; the stress of spring, M, serving to keep the presser feet, i', j', in contact with the upper surface of guide, C, as seen in Fig. 3. Treadle, N, is then depressed, thereby overcoming the stress of said spring, and causing the levers, I, J, to swing up until their respective stops, O, O', come in contact with the rear side of guide, C'. Ample room is now afforded for the insertion of the strap, P, between the opposing faces of slides, D, E, as seen in Fig. 7. Treadle, N, is then released, so as to swing down the levers, I, J, and cause their respective feet, i', j', to bear upon the opposite edges of the strap at a point very near the cutting edges of the knives, F, F'. The strap is then drawn forward in the direction of the arrow, the pressure of feet, i', j', preventing any wrinkling or buckling of the leather, while the knives trim off the edges of the strap in the usual manner. The above is a description of the preferred form of my machine; but in some cases either of the levers, I or J, may be pivoted to a fixture of the frame, instead of being hung upon a slide or carriage, as one shiftable carriage will afford a sufficient range of adjustment for all ordinary purposes."

Having thus described his machine, the claim of the patent is as follows:

"An improved strap trimmer, consisting of the frame or bedplate, A, guides, C. C', and slides, D, D', d, d', E, E', e, e', carrying the knives, F, F', and swinging levers, I, i, i', i'', J, j, j', j'', said slides being secured in place by set screws, G, G', all combined as herein described."

The provisions of the law regulating the granting of patents, which require an inventor to advise the world of his invention by a specific description thereof, and, by a definite claim, to obtain property in just so much of the invention as he seeks to appropriate, are essential that it may be known how much he has acquired as his own, and how far the public are to be restricted in the use of the invention. This specific description is open to be examined by all having occasion to enter that field of use or invention. In the case of Fay v. Cordesman, 109 U. S. 420, 3 Sup. Ct. 244, 27 L. Ed. 984, the supreme court said:

"The claims of the patent sued on in this case are claims for combinations. In such a claim, if the patentee specifies any element as entering into the combination, either directly by the language of the claim, or by such reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination, and the court cannot declare it to be immaterial. It is his province to make his own claim and his privilege to restrict it. If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material; leaving open only the question whether an omitted part is supplied by an equivalent device or instrumentality."

See, also, Brown v. Manufacturing Co., 6 C. C. A. 528, 57 Fed. 731. Examining the claim of this patent, it is apparent that its statement describing the elements claimed by certain letters referring to the drawings and specification, can have no significance, unless the drawings upon which these letters are contained are examined in connection therewith. The inventor has told us that he claims a specific construction which his invention comprises. Having described his invention, this claim permits us to ascertain the extent of the monopoly secured. Following the letters therein used to describe his specific form of construction, we find the outlines thereof fully indicated. The claim is the same in that respect as if, instead of using the outline letters, the inventor had specifically described the parts of the mechanism thereby designated, as shown in the drawings referred to. Aside from the state of the art, which would necessarily limit the inventor to a narrow field, we find that he has recognized this fact by the statement of the character of his invention, and the minute description of the construction which he claims as his invention. In view of the other machines in evidence in the case, and after inspection of the patents and models, we conclude that the Randall invention amounts to no more than to increase the effectiveness thereof by a combination of elements which are old. The patent must be sustained upon the theory that he has arranged old elements in a new way, so as to improve the effectiveness and accuracy of the former devices serving the same purpose. In the Osborn model, as we have said, we find all these elements. Randall, however, has made an improvement of a limited character by substituting for the levers and springs of that mechanism a rising and lowering lever, which is worked by means of a treadle and spring attachment, so that the same can be readily raised when the strap is taken from or inserted into the machine, and exert a yielding pressure upon the strap, to hold it in place while being trimmed. It is not necessary in the Randall mechanism to thread the strap into the machine, but

it may be inserted edgewise between the levers, and turned over, to be held in position by the fingers of the lever. This improvement, we think, the court below properly held to be more than a mere mechanical advance, and to rise to the dignity of invention. It was within a narrow scope, however, and the inventor, by accurately and specifically describing by means of the letters just what he has invented, has limited himself to the advance which he in fact made. The use of letters in describing a patented device has been the subject of consideration in a number of cases in the supreme court as well as in this court. Sometimes the letters have been held to limit the inventor to the very device thus designated; in other cases the mere use of letters has not been held to deprive the inventor of a liberal application of the doctrine of mechanical equivalents. An analysis of the cases will show that the conclusion reached depends upon the character of the improvement under consideration. If the invention is of a pioneer character, highly meritorious in conception and usefulness, the mere use of letters has been held not to limit the inventor to the exact form of device shown, but he is entitled to a broader construction of his patent, in view of the advance which he has made in the art. However, if the field of invention is limited, and an improvement of a narrow character has been made, just sufficient to cross the line which divides mechanical improvement from patentable invention, the inventor will be allowed the specific description shown, and no more. In other words, he will be held to have invented just what his claim shows to have been the specific subject-matter of his improvement. Without stopping to analyze the cases, we think the following citations establish the rules just stated: McCormick Harvesting Machine Co. v. C. Aultman & Co., 37 U. S. App. 299, 16 C. C. A. 259, 69 Fed. 371; Weir v. Morden, 125 U. S. 98, 8 Sup. Ct. 869, 3 L. Ed. 645; Hendy v. Iron Works, 127 U. S. 370, 8 Sup. Ct. 1275, 32 L. Ed. 207; and Muller v. Tool Co., 47 U. S. App. 189, 23 C. C. A. 357, 77 Fed. 621.

We therefore think that Randall made a patentable improvement over the old mechanism shown, but in view of its limited character, and the statement in his specifications of the character of his invention, the claim must be limited to the elements shown and described within the letters indicating the elements thereof. In view of this construction of the patent, it remains to consider whether the machine made under the Miller patent embodies this construction. We find a considerable departure in the construction of the levers and the manner of operation thereof from those shown in the Randall patent. The swinging levers are described in the Randall claim by the levers, i, i', i", j, j', j", and in the specification are described as "swinging levers, I, J, the front ends of which are bent inwardly at i, j, and then carried down at i', j', which downward prolongations form the presser feet of the machine. Furthermore, each lever has a segmental cylindrical flange, i", j", concentric with the pivots, H, H', which flanges have thongs, chains, or wire cords, K, L, attached thereto." These levers, with their cylindrical flanges, are thus made an essential part of the combination. This cylindrical flange is essential to the lever as described and shown. The segments operate

to carry the connecting chains out and from the place of attachment, so as to raise and lower the levers with the finger ends for holding the strap in place during the trimming operation. In this segmented form the leverage during the operation is made constant and unvarying. By a complete description, Randall has made these segments an essential part of his invention. These levers, being raised, admit the strap edgewise between the same for adjustment between the slides. But the strap cannot be thus placed ready for operation without first turning it between the levers. In the Miller device we do not find these segmental levers. The levers are attached to the machine in such wise that its fingers can be raised and entirely removed from between the slides which hold the strap for trimming. The lever is operated by chains attached to the end thereof, the pressure varying with the position of the lever, and has not the segmental construction which is necessary to the operation thereof as described and claimed by Randall. If there is merit in a machine so adjusted that the strap can be directly placed between the slides, the advance upon the Randall mechanism is apparent, because the lever fingers are permitted to be entirely removed for admission of the strap. Whether this change constitutes patentable invention or not it is unnecessary to determine. It is enough for us to say that we find, in view of the state of the art, Randall's invention a mere improvement upon former devices, and in no sense a pioneer invention; also that, in describing the invention and stating his claim, he has limited the extent and scope of his patent to the device shown and described in the claim. Thus construed, we do not find all the elements of the combination in the alleged infringing machine. Entertaining these views, the decree of the court, so far as it adjudges the Miller machine to be an infringement of the Randall patent, is reversed, and the cause remanded, with directions to dismiss the bill.