## MOORE v. EGGERS.

(Circuit Court of Appeals, Sixth Circuit. March 5, 1901.)

### No. 874.

PATENTS—INFRINGEMENT—APPARATUS FOR DIGGING TRENCHES.

The Moore patent, No. 524,502, for improvements in hoisting and conveying apparatus used in digging and refilling sewer trenches, while it discloses patentable invention and is valid, is limited by the prior art, as well as by the language of claim 1, to means for carrying the moving parts of the apparatus high enough to clear the lining of the trench and the heads of workmen therein, which, as described, consist of the use of a moving car or conveyor, run upon tracks laid on either side of the trench, upon which the buckets of earth are hoisted by means of a hoisting apparatus, and which is constructed "with an open base frame," having no timbers across it below the platform upon which the operator stands, and which is placed at a considerable height above the trucks. The patent is not infringed by a conveyor which lacks the element of the open base frame.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

The bill in this cause, filed by Moore, the appellant, charged the defendant, Eggers, with the infringement of the first claim of letters patent No. 524,502, issued to the appellant, August 14, 1894, for the invention of an improvement in "hoisting and conveying apparatus." The defendant denied infringement, and upon that issue the case was heard and determined in the circuit court; the validity of the appellant's patent not being disputed. That court, being of opinion that infringement was not shown, dismissed the bill. Thereupon the complainant appealed.

Arthur E. Parsons and George W. Hey, for appellant.
R. S. Taylor, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and CLARK, District Judge.

SEVERENS, Circuit Judge (after stating the nature of the case as above). The invention covered by the appellant's patent relates to a class of machines then in quite common use, and of which there were various forms of construction. Many of them had been patented in this country, and some of the patents are shown in this record. They

were intended for use in excavating and refilling trenches in constructing sewers and for similar purposes, and their principal feature consisted in their adaptation to a mode of operation whereby the earth was excavated, lifted, and carried back on the line of the trench, and filled in over the pipes; the latter having been laid intermediate the excavation and refilling. In this way only a limited portion of the trench need be open at any time, and the labor of re-handling the earth was avoided. They were long structures, running lengthwise of the trench, their length depending largely upon the distance over which the excavated material was required to be carried. Moore's patent professes to be for improvements on such machines, and acknowledges the existence of two of the principal patterns, namely, one in which the carriage conveying the buckets used in transportation was run from one end of the machine to the other on elevated tracks supported by movable trestles, which are shifted as the work progresses, the carriage being propelled by power located at one end of the apparatus, and the other one in which the power, an engine and boiler, together with the hoisting mechanism, were transported back and forth on tracks provided for the purpose. With regard to the first of these forms, Moore in his specification states the objections to be that:

"Such trestles constitute an expensive part of the apparatus, and, as they span the trench at short intervals, they form obstructions which interfere in a measure with the workingmen."

He states the objects of his invention to be—

"To dispense with the trestles heretofore employed, and thus reduce the cost of the apparatus; also, to so construct the apparatus as not to interfere with the workingmen or the sheeting used for preventing caving in of the walls of the trench; and, finally, to simplify the tackle for operating the hoisting and conveying mechanism."

The following are the drawings which accompany his specifications:

Fig. 1 is a sectional elevation of the apparatus. Fig. 2 is an end view of the conveying car. Fig. 3 shows the hoisting apparatus located on a carriage having wheels running on a track transversely across the conveying car, to facilitate dumping out at the side of the track or on one side of the central line of the trench. Fig. 4 represents a detail of construction. The hoisting cable, J, is attached at one end to the drum on which it winds, and extending over pulleys, k and $k^1$, and running under the vertically moving pulley, $k^2$, is secured at the other end to the carriage at $k^4$. The draft and stay cable, M, is attached at one end to the drum, $D^1$, on which it winds, and extending over the pulleys, k and N, and around the pulley, O, which is fastened to a rigid post, runs back to the carriage, to which it also is secured at $k^4$. The primary purpose of these cables is the one to hoist and lower the bucket; the other,

to move the conveying car along its tracks. The cables also perform a subordinate function in operating the mechanism, which it is not now necessary to explain. The specifications explain in detail the construction of the conveying car, E. In the main it is shown by the drawings. There is a raised platform at G, on which an operator stands to manage the hoist and signal the engineer. The cross timbers, e², of the frame are at the same height with the bottom of the platform, and of these, the cross timbers, and platform, the inventor says:

"By elevating the cross timbers and platforms of the conveying car, as shown in the drawings, the car clears the sheeting which usually projects above the trench when the same is started, and the danger of the car striking the workingmen in passing back and forth over the trench is also avoided."

He also states, in explaining the operation of the hoisting apparatus, that:

"The hoisting bucket, in being raised and lowered, passes through the aperture formed by the open base frame and the raised frame of the car."

By the "open base frame" we understand the space under the platform, G, and the cross-bars, e², is meant, and by the "raised frame," that part of the car which is above the "open base frame." Other parts of the specifications describe other features of the patent not involved; and it is believed that the drawings, with the foregoing explanations, are sufficient for the purposes of the present inquiry.

We have already referred to the recognition by the patentee of the pre-existing art. It would be tedious to go through with a detail of all the patents offered in evidence by the defendant to show the extent of the progress which the patentee was bound to acknowledge. We will refer to some of them. In 1871 patent No. 117,778 was granted to Hoffman for a machine for hoisting and carrying weights or heavy bodies. This showed an elongated trestle, in the upper part of which were built tracks running lengthwise. On these tracks was a carriage with wheels. The carriage frame descended below the tracks, and in that part of it was a pulley over which ran a cable to operate the hoist. When the load was lifted from below to the carriage, the hoisting apparatus was locked to the carriage, and the carriage, with its load, was drawn by the cable along the track, lengthwise of the trestle, to the place of deposit. This apparatus does not show a track with sufficient elevation to carry the load clear of men working below, nor is the trestle movable on tracks. In 1883 a patent, No. 277,403, was issued to Baldwin for a hoisting device for elevating coal, ore, and other like material. This appears to have been adapted, also, to the purpose of excavating wells and carrying the earth away from the opening. It shows a frame standing on wheels, and in the upper part of the frame was a hoisting apparatus. Tracks were laid, on which the wheels were to run. In operation the bucket was hoisted by the hoisting apparatus into the opening in the lower part of the frame, and thereupon the frame, with its load, was moved off on the track to the place of deposit. This patent, also, did not contemplate carrying the load at an elevation. In 1885 a patent, No. 333,456, was

issued to Ford for an "elevating and carrying apparatus," similar in most respects to Baldwin's, which showed a frame into the opening of which the bucket was lifted, whereupon the frame or conveyor was moved along on wheels and tracks to a place of deposit. This, also, did not contemplate a clearance below. In 1886, patent No. 346,850, was granted to Hunter for an apparatus for hoisting stone. This patent shows a conveyor of similar character. It seems, from the drawings, to have been high enough to carry the load over the heads of the workmen; but there is a cross beam at the bottom of the frame, as there is in the conveyor of the defendant's machine, which is alleged to infringe, which cross-bar would preclude workmen or projecting obstacles from standing or being in the line of the movement of the conveyor. Like those already described, the conveying frame was built on wheels and moved on tracks. The load was lifted into the opening of the frame of the conveyor. The next patent which we shall notice is No. 422,826, granted to Peterson, March 4, 1890, for a stone lifting and carrying machine. In this patent the track was supported on "suitable trestle work." The conveyor contained a hoisting apparatus, which lifted the load into the open bottom of the frame, and, when lifted, the load was taken by the conveyor to the place where it was deposited. In the upper part of the frame was a track running across it, and a carriage supporting the load, which could be moved from side to side of the conveyor, so as to deposit the load at either side of the central line of the tracks below, as in the Moore patent, and there was a platform at each end of the conveyor for the operator. This pattern of machine, although intended for hoisting and conveying stone, was equally adapted to hoisting and conveying earth, which would be but another use of it. Then, on May 20, 1890, patent No. 428,437 was issued to White, for an "apparatus for raising and moving earth." The frame in this patent was long, consisting of interchangeable lengths, which were supported by rollers running on tracks. In the upper part of the frame was a track running lengthwise, on which a carriage was propelled, carrying a bucket, which was first lifted up into the frame and locked to the carriage. The carriage, as well as the hoist, was actuated by cables extending to them from a drum or drums driven by the engine at the end of the apparatus. These cables were carried up from the drum or drums (for there might be more than one drum) over pulleys, which were at all times as high as the top of the carriage and quite out of the way of anything below. Platforms were arranged part way up on the inside of the frame on either side for the operator to stand upon while managing the lifting apparatus. The patent does not contemplate, or at least does not express, the purpose of having an opening in the base of the frame adapted to clear the workmen or the sewer constructions below, though to one looking at the drawings it would seem but a step further, plainly indicated by a need for it, to have added that feature.

It is manifest that the structures shown by former patents anticipated Moore's in all other features except the open base of the conveying car and the means of carrying the cables aloft. There was nothing new in the hoisting apparatus contained in the car. The

essence of his invention, as indicated by his own declarations, as well as by the limitations imposed by the state of the art as shown by the evidence, consisted in the production of the means for carrying the moving parts of the apparatus high enough to clear the lining of the trench and the heads of workingmen, during the process of excavation and transportation; and, further, it is clear that the patentee intended it should be carried sufficiently high to permit the excavation to go on from the beginning without danger, for, in the practice with the older apparatus, the clearance was effected when the trench itself was deep enough. We are not here referring to that part of the invention which relates to the details of the cables or the peculiarities of their functions, for we are concerned only with the first claim, which does not involve any peculiarity in them except the position they occupy. This first claim is as follows:

"In a hoisting and conveying apparatus, the combination; with tracks arranged lengthwise of the trench to be excavated, of a conveyor car running upon said tracks and provided with an open base frame and an open raised frame, forming an aperture for the passage of the hoisting bucket, a platform arranged on said frame adjacent to said aperture, and guide wheels mounted on the raised frame above said platform, and hoisting and draft cables running over said guide wheels, respectively, whereby such cables are supported clear of the operator standing upon said platform, substantially as set forth."

The second claim (there are but two) includes in a combination the peculiar attachments and adjustments of the cables. The infringement of this claim is not charged.

The defendant's machine, which is charged to be an infringement, is shown by the accompanying diagram.

It contains a car running lengthwise of the trench and carrying the hoisting apparatus; but the tracks on which it runs are supported by a trestle. This, though, was an old method of construction, which Moore essayed to improve. There is no "open base frame," as in the Moore patent (which there must be in order to exhibit the invention), open at the ends of the frame, having reference to the direction of the car when in motion. The axles of the wheels of the car run from side to side across the trench, and there is also an end piece in the bottom timbers of the car, which extends across the trench, thus closing in the bottom of the frame. In the first claim of the Moore patent the conveying car is stated to be one having an "open base frame;" and it would have defeated the object of his invention to have built his frame without an open base. Moreover, having thus described his conveyor in his claim, he puts it forward as a constituent of his invention, and he could not now say that the kind of frame he will employ is indifferent. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344; Fay v. Cordesman, 109 U. S. 408, 3 Sup. Ct. 236, 27 L. Ed. 979; Brown v. Manufacturing Co., 6 C. C. A. 528, 57 Fed. 731; Manufacturing Co. v. Randall, 43 C. C. A. 578, 104 Fed. 355.

Besides all this, if he were permitted to construe his claim as including tracks built on trestles and a conveyor which was not open at the ends, so as to admit of its safe passage over the trench lining and the heads of the workingmen, it would destroy his patent, so far as that claim is concerned; for it would reduce it to the prior art.

If the Moore patent had preceded all other devices for performing the work for which it was intended, it might very well be that he could bring under tribute all who should enter his domain, and build within the wide four corners of his invention; or, if he had made a large advance in a new direction in an art not new, he would have been protected to the extent of the limits of his large invention. These are propositions which were applied by the supreme court in Morley v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, 32 L. Ed. 715, and by this court in the cases of McCormick Harvesting Mach. Co. v. Aultman, Miller & Co., 16 C. C. A. 259, 69 Fed. 371, and Bundy Mfg. Co. v. Detroit Time-Register Co., 36 C. C. A. 375, 94 Fed. 524. It is contended by counsel for the appellant that Moore's invention is of a primary character, and should have the benefit of the liberal

107 F.—32

construction accorded to inventions of that character. But, as we have shown, this invention stands on distinctly narrow ground, and there is no room for broadening it.

It is quite clear to us that the decision of Judge Coxe, in the case of Moore v. Marnell (C. C.) 93 Fed. 467, a case founded on the same patent, which has been cited and considerably relied upon by the appellant, was controlled by the supposition, arising from the inadequate record before him, that Moore's invention covered an extensive field, which entitled it to a liberal construction; but in the present case it is made clear that, while the invention was both novel and useful, it had no wider scope than the special feature of the construction which he devised to carry his car and the apparatus it contained safely over the heads of the employés and the linings of the trench, and at the same time saving the expense of a trestle on which to lay his track. If the base frame of the patent were cut out, and the raised frame dropped to the wheels, we should have nothing new in it. His specifications would be unintelligible and the substance of his invention eliminated. The defendant does not use an open base frame conveyor, but a combination of elements found in the old art, assembled to perform the same service theretofore performed by them, and, therefore, does not infringe the complainant's patent.

Having reached this conclusion, it is unnecessary to inquire whether the further point made by defendant's counsel, that the fact of the defendant's track being carried on trestles while the complainant's rests upon the ground, as counsel insists it must to fulfill the patent, would relieve him from the charge of infringement, is well taken or not. Nor do we need to advert to any supposed modification of the invention patented to Moore by what transpired during the progress of his application through the patent office. Giving his first claim all the scope that the existing art will admit, we are quite clear that the charge of infringement is not made out. The decree of the circuit court dismissing the bill will therefore be affirmed.