## DURFEE v. BAWO et al.

### (Circuit Court, S. D. New York. October 4, 1902.)

1. PATENTS—CONSTRUCTION OF CLAIMS.

An American patent, which describes in its claims but one form of the device claimed, cannot be construed broadly to cover a different form described and claimed in a foreign patent previously granted to the same inventor, notwithstanding broad language used in the specification, but must be considered as an abandonment of the prior form.

2. SAME—INFRINGEMENT—TUBULAR BELLS.

The Harrington patent, No. 485,542, for an improvement in tubular bells, designed to improve the tone, discloses invention, and was not anticipated; but, in view of the state of the prior art, and especially of prior British patents to the same inventor, must be limited to the particular invention described, which consists of placing one or more stiffening devices within the tube "between its point of suspension and its end." As so construed, held not infringed.

3. SAME—PRIOR USE—EVIDENCE.

The defense of prior public use, to defeat a patent, must be established beyond a reasonable doubt.

4. SAME.

A patent is not invalidated because a device similar to that described was previously used by another, but for a different purpose.

5. SAME—ANTICIPATION—TUBULAR BELLS.

The Treat patent, No. 568,816, for a tubular bell, is void for anticipation by the Harrington British patent, No. 2,054.

In Equity.

Edward C. Davidson (Nathan Heard, of counsel), for complainant.
Dickerson, Brown & Raegener (Edwin H. Brown, of counsel), for defendants.

HAZEL, District Judge. This suit is brought for alleged infringement of two United States letters patent,—No. 485,542, dated November 1, 1892, granted to John Harrington, and No. 568,816, dated October 6, 1892, granted to James E. Treat. Both patents relate to improvements of cylindrical tubular bells. They are owned by complainant, to whom they were assigned by the patentees. For convenience the patents in suit will be referred to hereinafter as the "Harrington Patent" and "Treat Patent," respectively. Harrington's British patents will be appropriately distinguished.

The Harrington United States patent in suit, for which the complainant claims a liberal construction, will first be considered. The grounds for such basic claims involve an examination of the principles of the laws of vibrating sounds as applied to tubular bells, and of various of the patents cited by defendant in anticipation of the patents in suit. It is clear at the outset that the Harrington patent is for an improvement to remedy and perfect apparent inefficiencies in the sound of a tubular bell. There is no novelty in the bell itself, in the means employed to suspend it, or in the application of external force. The single claim of the patent reads as follows:

"In a musical sounding apparatus of the class described, a suspended tube adapted to be struck by a hammer and caused to vibrate to produce by its vibration a musical sound of a certain pitch, combined with one or more stiffening devices in said tube between its point of suspension and its end to affect the vibrations of the metal of the tube and the quality of the tone produced by such vibrations, substantially as described."

The general nature of the invention is concisely stated in the specifications to be an invention relating—

"To means and apparatus for the production of musical sounds of that class wherein a suspended metallic tube is adapted to be struck by a hammer, the vibration of the metal of the tube caused by the blow producing a musical sound. In apparatus of this class the pitch of the sound produced by the tube when struck by a hammer and set in vibration depends upon the quantity of metal in the tube and is unaffected by the column of air contained within the tube."

The patent illustrates two forms of stiffening the tubular bell: (1) A rigid pin or cross-piece inside the tube at one or both ends; (2) a polygonal form secured by removing segments of the packing or plugging inserted at the end and within the tube. In each instance, the stiffening device is integral with the tube. The defenses interposed are want of patentability, anticipation, noninfringement, prior public use, and abandonment of forms of the invention described by the British patent No. 2,054, granted to Harrington and hereinafter more particularly referred to.

The patent is not void for lack of invention. It is well established by the proofs that tubular bells, without a stiffening or loading device, emit inharmonic sounds technically called "hooplike vibrations,"

which unfit them for the variety of musical purposes to which they may be applied by the adoption of a stiffening device, which consists in the addition of metallic portions to the end or within the tube. The essence of Harrington's contribution to the state of the art is the improvement of the quality of the tone of a tubular bell. By the tone of the bell is meant the quality, pitch, and volume of sound. When a tubular bell is struck a blow by a hammer, the fundamental sound is followed by nascent, undulatory, longitudinal vibrations, extending the entire length of the tube. These vibrations are styled "overtones," or "partials." They are similar to those which emanate from a metallic rod or plate. But, as the tubular bell is hollow, it is proportionately lighter and stiffer than a rod rigid at one end and yielding at the other, and consequently the quality of sound and vibration is perceptibly unlike. It is distinguished from the ordinary bell by narrow transverse dimensions, by the character of metal which composes it, and by the sound produced when struck. Experience has shown that the vibratory sounds are not always in harmony with the pitch or fundamental note. The fundamental note or pitch is regulated and controlled—that is, lowered or raised—by the dimensions of the tube, by the general character of the metal employed in its construction, and by the stiffening device, which suppresses the inharmonic vibrations perceptible in the plain tubular bell. These inharmonic vibrations are described by Professor Main, complainant's expert witness, as "hooplike vibrations." He says that a tube, at the moment of impact of the hammer, becomes slightly oval, due to compression; that the tube vibrates back and forth transversely, precisely as a hoop would do,—hence "hooplike vibrations," which rapidly correspond with the pitch of the note which is produced.

After giving the testimony of the expert witnesses careful consideration, I am clearly satisfied that hooplike vibrations exist in an unstiffened or unweighted tubular bell, and that the quality of tone is thereby impaired. The utility of the tubular bell wholly consists in a melodious progression and modulation of the fundamental tone. Defendant's expert witnesses testify that both patents in suit, by their construction, added increased weight to the tube, with the practical view of varying the sound, and not to suppress inharmonic and discordant vibrations. Their testimony tends to show that such vibrations have no appreciable existence in the tubular bell, and, therefore, no disturbing feature is apparent in its musical tone. Hence nothing has been achieved by the inventions. It was not the object of the invention to vary the sound. The patentee expressly states that the invention designs to improve the quality of the tone. To that end it was desirable to extinguish or suppress the inharmonic component sounds attributable to the plain tubular bell. If, therefore, the tone is pleasingly varied by the patentee's stiffening device, it is an incident following a claim whose essential feature is the improvement of the quality of the tone by the adoption of a certain device. Tilghman v. Proctor, 102 U. S. 711, 26 L. Ed. 279. It is quite true that weighting, thickening, or loading a rigid metallic bar, usually at the end or in prongs in tuning forks, will produce vibrating overtones. Such overtones, however, are not always musically melodious.

The defendant contends that the prior art discloses a method of stiffening or loading in various acoustic vibrating musical instruments; that, to obviate inharmonic tones, such instruments were weighted or stiffened in substantially the same manner as described by the Harrington device. The United States patents, Nos. 329,090, of 1885, and 375,654, of 1887, granted to Segrove; the Starr United States patent, No. 8,537, of 1851; Butterworth's United States patent, No. 299,956, of 1884; the United States patent to Fischer, No. 309,138, of 1884; the United States patent, No. 149,585, of 1874, to Hill; and the Hummel German patent, No. 7,405, of 1879,—are cited in anticipation. These patents, however, are for tuning forks,— for improving the purity of sound. They point out a manner of stiffening the prongs, or weighting a ring, or other vibrating segments, to affect the tone. None of them have been applied to a tubular bell. The nearest application would seem to be the Hill patent, which shows a short hollow tube, split diametrically throughout its length, and having superimposed upon its upper end a split lead ring. This ring, being an additional weight to the vibrating ends, affected the tone. The patent was for tuning the device, and not for suppressing component notes. I do not think that any of these patents are anticipations of complainant's device, which indubitably improved the tubular bell in a manner which entitles it to classification as a harmonious musical instrument.

I do not consider the device in suit, or Harrington's original British patent, No. 2,054, to which particular reference will follow, remarkably inventive productions. Weighting or loading a vibrating musical instrument,—merely placing an additional portion of metal on or within a tubular bell,—to affect its melody, especially in view of the means employed in other vibrating musical devices of another class to improve the purity of sound, does not take high rank in the field of invention. It has enough merit, however, to advance the utility of tubular bells and make them useful in new fields. The extent to which the patent in suit deserves protection against infringement will not be considered.

The complainant contends that the invention covered by the claim of the Harrington patent is so far primary that it should be construed unrestrainedly, and to embrace within its scope the defendant's structure, which functionally operates in substantially the same way, producing a suppression of inharmonic overtones in the tubular bells of defendant's manufacture. The scope of the patent in suit must be measured by British improvement patent, No. 2,054, issued to Harrington February 10, 1888. The specifications of that patent state that the object of the patentee is to improve the tone of the apparatus described by his British patent, dated October 2, 1884 (in which tubes were employed, open at both ends, in combination with a clock), and to afford facility for tuning the same with the greatest accuracy. This the patentee proposed to accomplish by employing a plug or cap at either or both ends of the tube, which, when driven or screwed into or around the tube, afforded a satisfactory tuning and increased the volume of sound produced. A set screw or other suitable means were employed to keep the plug or cap in position.

Subsequently, in 1888, Harrington obtained another British patent for curing a defect caused by vibrations of the tubular bell. These vibrations resulted in a confused sound, which a thick felt damping appliance was designed to destroy. April 11, 1892, another British improvement patent, No. 6,922, was granted to Harrington, associated with Thomas Latham. The specifications of the latter patent, which substantially embody the device of the Harrington patent in suit, state that the tubular bells, closed at both ends in the manner described by the British patent, No. 2,054, were sometimes injured by driving the plug into the top, therefore requiring a close-fitting screw cap to prevent loosening, which impaired the sound. The improvement consisted in riveting a sound plug or bolt or pin within and near one or both ends of the tube.

The defendant by its amended answer avers that the British patents, Nos. 2,054 and 6,922, anticipate the patent in suit, and, further, that the patentee omitted to include in his patent in suit that form of his invention described in British patent, No. 2,054, and illustrated in Fig. 4 accompanying the application for that patent; and, having abandoned that form of his invention, the patentee is now estopped from claiming such a construction of the patent in suit as would cover that claim. As already stated, British patent, No. 2,054, employs a plug or cap at either or both ends of the tube. The patent in suit describes a rigid pin or cross-piece inside the tube and a plug having portions removed at various points between the tube and the plug. I think this must be considered as a tacit abandonment of the enlarged claims of the prior patent. Giving to such British patent a broad scope must obviously lead to a narrow construction of the claims of the patent in suit. It is quite true that the patentee in his specifications describes a broad invention. He says:

"The shape of the stiffening devices may be varied without departing from this invention, the gist of which lies in stiffening or solidifying the tube at one or more points, to so affect the vibration of the metal of the tube as to produce the improved quality of tone desired."

In view of the prior British patents granted to Harrington, he was not entitled to a broader interpretation than that allowed by the patent office, nor in any event broader than he, already a holder of a foreign patent, saw fit to cover in his application to the patent office of the United States. The patent in suit has improved the old tubular bell, and therefore must be restricted to the improvement described. Indeed, the file wrapper shows satisfactorily, I think, that it was intended that the complainant's device should be limited to one or more stiffening devices "inside" the tube, or to devices located "between" the point of suspension of the tube and its end. The original specifications filed by the patentee include a stiffening device "suitably located" with relation to the length of the tube to affect the quality of the tone. This claim was amended so as to conform to the narrower scope. The claim cannot be enlarged beyond the scope of its intention.

The correspondence of the commissioner of patents shows that in his opinion the patent was anticipated by Harrington's United States patent, No. 389,841, granted September 18, 1888. He made no

reference to the British patent, but seemed to think that it was not new to stiffen tubes at various points of their length for the purpose of obtaining harmonious sounds. He cited an organ pipe as one that was stiffened to qualify the tone, but subsequently, after an extended correspondence, allowed claim 2. The commissioner held claim 1 was superfluous, and substantially similar to claim 2. In this, I think, he erred. Notwithstanding the broad language employed in the specifications, the claim allowed all that the patentee could be allowed. The court is not informed whether the patent office carefully examined the state of the prior art or the British patents referred to. It is presumed, from the exhibits in evidence, that they did, and therefore limited his claim. If the applicant felt aggrieved because of that limitation, his remedy was to appeal from the decision of the patent office. As no ambiguity is discovered in the terms of the claim of the patent in suit, it certainly should not be enlarged beyond the scope of its claim as allowed by the patent office. Complainant cannot show that his invention is broader than the terms of his claim, "or, if broader, he must be held to have surrendered the surplus to the public." Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344; Machine Co. v. Lancaster, 129 U. S. 273, 9 Sup. Ct. 299, 32 L. Ed. 715; Merrill v. Yeomans,. 94 U. S. 568, 24 L. Ed. 235. In coming to this conclusion I am influenced not wholly by the action of the patent office, but by the Harrington claims as specified in British patent No. 2,054. The patent in suit can, therefore, be given no wider scope than such a betterment over the prior patent as may be specifically pointed out. Harrington elected to take for his American patent the forms of his. device as illustrated by Figs. 1 and 2 of the patent. The character of the improvement pointed out by him in his specifications and covered by his claims is not such as entitles it to a broader construction. The prior art limited the field of his invention. The functions performed by the tubular bell as a result of the patent in suit were not new. No reason exists, therefore, for making the defendant's device sufficiently broad to come within the scope of complainant's patent. Manufacturing Co. v. Randall, 43 C. C. A. 578, 104 Fed. 355. I do not think that the views expressed in the case of Extraction Co. v. Brown, 43 C. C. A. 568, 104 Fed. 345, by the circuit court of appeals for the Eighth circuit, cited by counsel for complainant, are at variance with this view. In that case the court held that the circumstances were not such as to require or justify a literal interpretation of the patentee's claim. It was there held that the invention was not anticipated and was a meritorious one, and that the device illustrated in the drawings, as applied to a double-deck furnace, should be construed to apply to either a single or double-deck furnace. Man-. ifestly the state of the art, as ascertained by the British patents claimed to anticipate, and the use of stiffening devices for controlling vibrating sounds in the different classes of musical instruments, amply justify restricting the actual claim allowed, irrespective of the broad description and statements contained in the specifications.

The defendant's device practically secures the results achieved by the Harrington device. Harmonious quality of tone is produced by

striking the tube at or near a solid ring or cap affixed to its end. In tuning defendant's device to secure the required pitch, the metal is cut off at the bottom; the ring being integral with the upper end of the tube. Defendant's structure seems to be more nearly the equivalent of Fig. 4 of the Harrington patent, No. 2,054. The manner of attaching the ring integrally would not escape the charge of infringement. Bundy Mfg. Co. v. Detroit Time Register Co., 36 C. C. A. 375, 94 Fed. 534. By the device in suit the metal tube is shortened or reduced to obtain a required pitch proportionately to the additional metal supplied by the stiffening device. There is such a wide departure in the defendant's structure from the literal statements of the claim in suit that it cannot be held to infringe complainant's tubular bell, which consists of a metallic addition to the tubular bell firmly affixed within the tube. Both perform the same function, but in a substantially different way, giving effect to the narrow construction of the claim of the patents.

Upon the question of prior public use, I have read the testimony upon which this defense is based. The testimony of Seymour, witness for defendant, showing that during 1884, and August 11, 1886, he completed a chime of bells for a clock, the tubular bells of which were stiffened, does not seem to be of such a reliable nature, in view of the circumstances, as to justify its acceptance in anticipation of the Harrington patent. It is of the same class of testimony which requires the nonpresence of a reasonable doubt before it can be given controlling credence. Corroboration of Seymour's testimony is attempted by convenient diaries and memorandum books kept at the time by his wife and other witnesses, from his relations, who remember having seen the clock at the time or times mentioned. The testimony is not so clear as to remove a reasonable doubt which exists as to its accuracy. Coffin v. Ogden, 18 Wall. 120, 21 L. Ed. 821; Barbed Wire Patent, 143 U. S. 284, 12 Sup. Ct. 443, 36 L. Ed. 154; Brown v. Zaubitz (C. C.) 105 Fed. 242; Dodge v. Post (C. C.) 76 Fed. 807. Furthermore, I think that the cross-pins used in the Seymour bells were employed simply as a means for suspending the tubes. It was not used for the purpose of improving the quality of the tone, and, therefore, it does not anticipate the Harrington patent in suit. This conclusion finds support in Clough v. Manufacturing Co., 106 U. S. 175, 1 Sup. Ct. 188, 27 L. Ed. 134, Nelson v. Type-Founding Co. (C. C.) 91 Fed. 418, and Chisholm v. Johnson (C. C.) 106 Fed. 191.

## The Treat Patent.

By this patent the end of the tube is firmly held by a ring, which increases the thickness of the end of the tube. The ring may be applied to either or both sides of the tube. The specifications say that when the tube is suspended by a suitable cord, and the ring is struck at its end by a hammer or in any other usual manner, the tone of the bell is greatly improved. The first claim of the specifications originally filed with the commissioner of patents was for tubular bell having its end reinforced by metallic rings, substantially described. The application was rejected on the ground that the rein-

forcement rings specified were old, in view of Fig. 3 of the Harrington patent in suit. This claim was waived, and the claims in suit allowed. Defendant's device is practically similar to the invention described in the Treat patent. Structurally, the ring or cap arrangement around the end of the tube is integral to it, and in effect undoubtedly contains the essential elements of the Harrington British patent, No. 2,054, and the Treat patent in suit. The claims allowed are as follows:

"(1) A tubular bell having a metallic ring secured thereto at its end, said metallic ring fitted in intimate, solid contact throughout its length against said tube, whereby the sonorous vibrations of the latter are amplified, substantially as described.

"(2) A tubular bell having its end fitted very firmly to the exterior of a metallic ring, substantially as described.

"(3) A tubular bell having its end embraced and held firmly both externally and internally between metallic rings, substantially as described."

The exterior ring is very much like the plug or cap device of the earlier British patent. All that Treat seems to have done has been to substitute a ring around the end of the tube in place of the cap screwed to the tube, as described in Fig. 4, and to substitute or affix a ring within the tube in place of the plug or disc in the later Harrington patent. Each of these forms constitute devices tending to stiffen the tube in the manner pointed out. They do not perform any new function. I am therefore of the opinion that the scope of the claims of the Treat patent is fully embraced in the claims of the Harrington British patent here considered. It is merely change of form without being an improvement,—a detail of construction which a skilled artisan by the employment of ordinary mechanical knowledge has made superior to the old tubular bell. When a defect in the Harrington patent in suit, consisting of liability to loosen the diametrical pin by the frequency of the hammer blow, thereby injuring the tone of the bell, became apparent, it was not difficult to obviate such defect in the light of the prior art. An exterior ring integral with the end of the tube appears to have taken the place of the screw cap arrangement of the Harrington British patent, while an interior ring has taken the place of the plug or disc. The Treat patent, therefore, cannot be distinguished by structural changes or superior workmanship from the earlier British patent and the improvement patent in suit. The right of the public to use what has been disclosed by the prior British patent, the monopoly having expired, should not be curtailed.

It follows that for the reasons stated the Treat patent is anticipated by British patent No. 2,054. The Harrington patent must be restricted in its claims to a stiffening device within the interior of the tube, as therein more specifically referred to. The defendant does not employ a device covered by those claims or secured by that patent. It therefore cannot be held to infringe. A decree may be entered dismissing the bill.