WASHBURNE v. CONSOLIDATED SAFETY PIN CO.

(District Court, D. New Jersey. June 24, 1912.)

1. PATENTS (§ 37*)—ANTICIPATION—PRIOR PATENT INCLUDING SAME DEVICE.
   A device which is an essential part of an invention previously patented cannot be made the subject of a separate patent.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 41–44; Dec. Dig. § 37.*]

2. PATENTS (§ 328*)—ANTICIPATION—CUFF FASTENER.
   The Washburne patent, No. 517,084, for a cuff fastener, is void for anticipation by patent No. 500,640 to the same patentee for a collar fastener, which is essentially a duplication of the device of the later patent to adapt it to a somewhat different use. Claims 1 and 2, if conceded valid, must be narrowly construed in view of broader rejected claims, and of the prior art, and, as so construed, held not infringed.

3. PATENTS (§ 165*)—CONSTRUCTION—LETTERED CLAIMS.
   Letters used in the claims of a patent in describing the device as a general rule are restrictive, and, when the advance in the art is slight and the field of invention limited, will confine the inventor to what he has definitely shown and claimed.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

4. PATENTS (§ 328*)—INFRINGEMENT—CLASP.
   The Washburne patent, No. 553,972, for a clasp or fastener, narrowly construed as required by the prior art, held not infringed.

In Equity. Suit by James V. Washburne against the Consolidated Safety Pin Company. On final hearing. Decree for defendant.

George Cook, for complainant.

William B. Greeley and William A. Redding, for defendant.

CROSS, District Judge. Two patents are involved in this suit, one of which has expired and the other will expire in about eight months. The first of them, for a "cuff fastener," No. 517,084, was issued March 27, 1894, the second, for a "clasp," No. 553,972, was

issued February 4, 1896. Both were issued to the complainant, whose title thereto is not questioned. Neither of the patents has been adjudicated. The defenses are of the usual character. The patents will be considered in the order of their issue. The inventor in the first patent says:

"My invention has reference to improvements in adjustable cuff fasteners and consists of a device of the same class as that for which United States letters patent No. 500,640 were granted me July 4, 1893, in adjustable collar fasteners. The device in the present application is more especially designed to operate as a cuff fastener, and has therefore a different conformation than the device in said patent to adapt it to the conditions of its new situation."

This patent contains three claims, the first two of which are in issue. They are as follows:

"1. The combination of the plate $B$ provided with interior recess $D$, the plate $A$ suitably united at one end to the plate $B$ and provided with a slot $E$, the spring $F$ provided with a short limb $G$ seated in said recess $D$, and with the long limb $H$ projected along the inner face of plate $A$, the lever $L$ provided with short end $N$, adapted to be optionally thrown across the interval between said plates, or parallel with the plate $A$; substantially as shown, and for the purpose described.

"2. The combination of the plate $B$, provided with the recess $D$ in its inner face, the plate $A$ suitably united at one end to plate $B$ and provided with a slot $E$, a loop spring $F$ provided with a short limb $G$ seated in recess $D$, and the long limb $H$ projected from the closed end of the interval between said plates outwardly across the slot $E$, and a lever $L$ provided with ears $M$ and short end $N$, and seated at one end of the slot $E$ and between the plate $A$ and spring $F$, and adapted to be thrown into and out of the slot $E$, and thereby optionally force the spring $F$ toward the plate $B$; substantially as shown, and for the purpose described."

The only essential differences between the claims are that the "spring" referred to in the first claim is in the second called a "loop spring" and the "lever" of the first claim is in the second "provided with ears." On the part of the defendant it is claimed that the complainant's patent, No. 500,640, discloses the entire invention of the patent under consideration, and the above quotation from the specification certainly lends countenance to the claim. The patentee therein speaks of it as a "different conformation" of the former patent "to adapt it to the conditions of its new situation." In the earlier patent it was designed to clasp and hold together the ends of a shirt collar, while in the patent in suit it was intended to secure a cuff to a wrist-band. Moreover, and necessarily because of its intended use in the earlier patent, its so-called frame was in the form of a capital S, containing two clasps, while in the later it is shown in the form of a capital U, containing but one clasp. The reason for this modification is apparent. In the one case, two clasps, one for each end of the collar, were deemed necessary; while in the later, as applied to a cuff, a single clasp sufficed. A careful examination of the two patents shows that the earlier is but a duplication of the later. By cutting the S-shaped frame of the earlier patent into halves, we have two U-shaped frames, each of which, in combination with other elements, shows the device of the patent in suit. In each of said halves are found substantially the same elements in combination, per-

forming the same functions, and in the same way, that are found in the patent under consideration. As is well known, the capital S is but the union of two capital U's. There certainly was no invention in cutting in halves the S-shaped frame. That fact required much the same kind and amount of inventive talent that would be required to cut a two-holed mousetrap into two traps, each having one hole.

[1] The complainant contends, however, that the earlier patent ought not to be deemed an anticipation of the patent in suit, because the two patents were invented simultaneously and the features of both disclosed to his solicitor when he prepared the application for the patent for his collar clasp, No. 500,640. The proof of this fact, if it · be a fact, rests upon the uncorroborated testimony of the patentee, and has not been made to appear by that clear and convincing evidence which the situation demands. But, assuming the contrary, the case is not altered, because the first patent contained no reservation whatever. Moreover, the application for the patent under consideration was not filed until several months after the issue of patent No. 500,-640, although it embodied the essential elements and combinations of the earlier elements and combinations, without which the first patent would not have been granted. The patentee must, therefore, under the circumstances, be deemed to have abandoned or surrendered to the public whatever was not therein and thereby claimed. Miller v. Brass Co., 104 U. S. 350, 352, 26 L. Ed. 783; Mahn v. Harwood, 112 U. S. 354, 360, 5 Sup. Ct. 174, 6 Sup. Ct. 451, 28 L. Ed. 665. In Palmer Pneumatic Tire Co. v. Lozier, 90 Fed. 732, 744, 33 C. C. A. 255, 267, the court says:

"One cannot lawfully have two patents for one invention. When once the invention has been used as the consideration of a grant, its value for that purpose is spent, and there is nothing in it on which a second grant can be supported. And this rule holds good, though the scope of the patents may be different. One cannot extract an essential element of his invention from a former patent, without which the former patent would not have been granted, and make it the subject of a subsequent patent. The case of Miller v. Manufacturing Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121, is a signal illustration of the rule which has been settled by that and former decisions of the Supreme Court upon that subject. In that case, one of the elements of the combination previously patented consisted of a spring adapted to be used in a cultivator for the purpose of aiding in depressing and in lifting the bar of the implement to which the teeth were attached. Subsequently he obtained another patent for the single function of the spring in aiding to lift the bar. The second patent was held void upon the ground that the matter of the invention was included in the matter of the invention for which the former patent was granted. That decision shows that it is not necessary to the rule that the patents should be for coextensive inventions, or that the subject-matter thereof should be technically the same. The rule rests upon the broad and obvious ground that, if the second patent is for an invention that was necessary to the use of the invention first patented, it cannot be sustained."

[2] It is hardly open to question that, had the complainant held a valid patent for what is claimed by the patent in suit, he could have successfully maintained an action for infringement against one who under a subsequent patent manufactured the article shown and claimed in patent 500,640. But, if the first patent in suit can be upheld, its claims must nevertheless be narrowly and strictly construed, and thus

construed the defendant does not infringe them. The particular claims in issue were allowed without alteration or amendment. But in the application as made there were originally 4 claims, of which the two in suit were Nos. 2 and 3. The other claims, 1 and 4, were rejected by the examiner in view of the prior art, and the patentee acquiesced in such ruling and struck them out. The rejected claims were as follows:

"1. The combination of the plates $A$ and $B$, spring $F$ provided with limb $H$, and seated between said plates, and lever $L$ provided with engaging end $N$, and seated in one of said plates, in position to crowd said limb $H$ toward the other of said plates; substantially as shown, and for the purpose described. * * *

"4. The combination of the plates $A$ and $B$, united at one end, the looped spring $F$ seated between said plates, and suitable means for optionally pressing a portion of said spring against the interposed fabric; substantially as shown, and for the purpose described."

The above claims were manifestly much broader than those allowed. The claims as allowed must therefore be read with reference to the rejected claims, and cannot be broadened and made to include what was rejected. Thus in Knapp v. Morss, 150 U. S. 221, the court, at page 224, 14 Sup. Ct. 81, at page 82 (37 L. Ed. 1059) said:

"It is well settled that the second claim must be read and interpreted with reference to the rejected claims and to the prior state of the art, and cannot be so construed as to cover either what was rejected by the Patent Office, * * * or disallowed by prior devices."

So also in Hubbell v. United States, 179 U. S. 77, 80, 21 Sup. Ct. 24, 25 (45 L. Ed. 95), the court said:

"An examination of the history of the appellant's claim as disclosed in the file-wrapper and contents shows that, in order to get his patent, he was compelled to accept one with a narrower claim than that contained in his original application, and it is well settled that the claim as allowed must be read and interpreted with reference to the rejected claim and to the prior state of the art, and cannot be so construed as to cover either what was rejected by the Patent Office, or disallowed by prior devices."

Again, the prior art requires the claims in controversy herein, if upheld, to be narrowly and strictly construed. Examination of two patents to Atwood, Nos. 289,057 (1883) and 333,494 (1886), and one to Croup, No. 345,216 (1886), clearly shows that Washburne was anything but a pioneer in the art. It is, however, not deemed necessary to enter into a discussion of those patents in detail. It is sufficient to say that Croup comes near enough to the patent in controversy to require a strict construction of its claims. The only substantial difference between them is that Croup utilizes the long arm of his lever by shaping it to form a button plate, so that it serves both as a clasp and a sleeve button. That patent shows a U-shaped frame, a U-shaped spring seated therein, having one long and one short limb, and an operating lever pivotally mounted on one member of the frame. With a device of that character present in the art, it is manifest that whatever advances are shown by the patent under consideration are relatively slight and unimportant.

[3] Furthermore, the claims are lettered, and, while such claims do not necessarily and in all cases prevent an invocation and application of the doctrine of equivalents, still as a general rule they are deemed restrictive. The exception exists when they are applied to a broad and basic invention; but where, as in this case, the advance in the art is slight and the field of invention limited, the inventor will be confined to what he has definitely shown and claimed.

The case of Ross-Moyer Mfg. Co. v. Randall, 104 Fed. 355, 359, 43 C. C. A. 578, 582, sets forth the rule in the following language:

"The use of letters in describing a patented device has been the subject of consideration in a number of cases in the Supreme Court, as well as in this court. Sometimes the letters have been held to limit the inventor to the very device thus designated; in other cases, the mere use of letters has not been held to deprive the inventor of a liberal application of the doctrine of mechanical equivalents. An analysis of the cases will show that the conclusion reached depends upon the character of the improvement under consideration. If the invention is of a pioneer character, highly meritorious in conception and usefulness, the mere use of letters has been held not to limit the inventor to the exact form of device shown, but he is entitled to a broader construction of his patent, in view of the advance which he has made in the art. However, if the field of invention is limited, and an improvement of a narrow character has been made, just sufficient to cross the line which divides mechanical improvement from patentable invention, the inventor will be allowed the specific description shown, and no more. In other words, he will be held to have invented just what his claim shows to have been the specific subject-matter of his improvement."

For the reasons given, the complainant is not entitled to invoke an application of the doctrine of equivalents. His lettered claims must be taken as they read. In both of the claims in issue the short limb G of the spring F is seated in a recess L. The claims, drawings, and specifications agree in this respect. The defendant's device has no such recess, and for that reason, if for no other, does not infringe either of the claims in suit.

[4] The second patent in suit has five claims as follows:

"1. A clasp or fastener consisting of a suitable frame, a spring located between the plates or leaves thereof and provided with an elongated slot, and a lever fitted to said frame and having the lug or projection formed on one end thereof, adapted to fit in the slot formed in said spring, for the purpose of holding the latter in its position, substantially as described.

"2. A clasp or fastener consisting of a suitable frame having a slot or opening formed in one plate thereof, a bent lever fitted to said frame and in said opening, and having a projection on one end thereof, and a spring fitted in said frame, and provided with an elongated slot for receiving the lug or projection on the end of said lever, substantially as described.

"3. A clasp or fastener consisting of a suitable frame, one plate or leaf of which is provided with an opening, a spring inclosed within said frame, and a lever fitted in said opening, and bearing on said spring, and having shoulders or projections thereon to prevent said lever from being forced through said opening, substantially as described.

"4. In a clasp or fastener, the combination with a suitable frame, one plate or leaf of which is provided with an opening, of a spring inclosed within said frame, one plate of which is provided with a tongue or projection to fit in a corresponding recess or opening in said frame, and the opposite plate or leaf being provided with an elongated slot, a lever fitted in the opening in said frame, and having one end thereof bent substantially at right angles to its length, and bearing on said spring, and provided with a lug or projection adapted to fit in the elongated slot in said spring, substantially as described.

"5. A clasp or fastener constructed with a U-shaped frame A, provided with a loop having a hole or opening therein for the attachment of a chain, a spring inclosed and locked within said frame, and slotted as shown, and a lever C fitted to the frame and engaging in the slot in said spring, substantially as described."

These claims, all of which are in issue, provide for slight modifications of or improvements in the first patent. The novelty of claims 1, 2, 4, and 5 consists in the formation of a lug or projection on the short arm of the lever, and an elongated slot in the spring to cooperate with such lug or projection. In claim 1 the lug or projection is described as "adapted to fit in the slot formed in said spring." In claim 2 the spring is described as provided with a slot "for receiving the lug or projection on the end of said lever." In claim 4 the lug or projection on the lever is described as "adapted to fit in the elongated slot in said spring." Claim 5, however, does not mention the lug or projection, but describes the spring as "slotted as shown," and the lever as "engaging in the slot in said spring."

An examination of the file wrapper and contents shows that the Examiner in the Patent Office regarded the features just mentioned as the distinguishing characteristics of the claims referred to. Several claims which did not embody those characteristics were rejected. After which the examiner wrote the applicant as follows:

"If applicant will present a claim which will present points of novelty on which other claims were allowed (1, 2, and 4) stating the features, which he wishes to cover in the present claim, it is thought that this claim may be allowed."

And in response to that communication the patentee submitted claim 5 in the form in which it now appears, which was allowed. His own prior patent and one to Feiner and Saxton, No. 514,454, required that the claims be limited as above mentioned. Indeed, the Feiner and Saxton patent was cited by the examiner in rejection of the claim for which claim 5 as allowed was ultimately substituted.

The distinguishing feature of claim 3 is found in the provision for fitting the lever with "shoulders" or "projections" thereon to prevent it "from being forced through said opening." Outside of the provision of the shoulders no novelty is either shown or claimed. Indeed, the only other element mentioned, which could possibly require comment, is that the U-shaped feature is "provided with a loop having a hole or opening therein for the attachment of a chain." But not only was this feature void of invention, but it was disclosed in the Atwood patents above referred to. Construing claims 1, 2, 4, and 5 narrowly, as they must be, the defendant does not infringe them. The defendant's clasp does not have a lug or projection on the end of the lever, or a slot in the spring with which said lug or projection is adapted to engage, nor does it have any need for such an engagement. In the complainant's device it is intended to prevent lateral displacement of the spring, but the defendant provides against such displacement by having the edges of its frame raised, thereby forming flanges or shoulders within which the spring rests. It is true the complainant's expert says that this arrangement does not prevent lateral dis-

placement, but it is quite apparent that it does. Moreover, the defendant in this respect merely follows two patents to Feiner and Saxton, 514,454, above mentioned, and 528,469. As to infringement of claim 4, it is admitted that the defendant's clasp has shoulders which prevent the lever from being forced through the slot in the frame. This feature, however, is shown in the Feiner and Saxton patent 528,469. But, aside from its disclosure in the prior art, it seems clear that the formation of shoulders on a lever to prevent its slipping through a slot presented no feature of novelty or invention. Once such a condition were presented, the merest tyro in mechanics would understand that the widening of the lever at the proper point, or the insertion of a pin through it, or the provision of other simple means, would remedy the difficulty.

For the reasons given, the bill of complaint will be dismissed, with costs.